DYE *et al. v.* McINTYRE FLORAL CO.

(*Nashville*, December Term, 1939.)

Opinion filed June 8, 1940.
Designated for publication November 23, 1940.

Louis Farrell, Jr., of Nashville, for complainants.

Walter. Stokes and Roberts & Roberts, all of Nashville, for defendant.

Mr. Justice Chambliss delivered the opinion of the Court.

This suit is brought by employees of defendant company for an alleged deficiency in wages paid them, on the theory that they are entitled to the benefits of the "Fair Labor Standards Act" of 1938, being Title 29, section 201, *et seq.*, of the U. S. C. A. The chancellor sustained a demurrer raising the defense that the complainants were employed in agriculture and engaged in handling "agricultural or horticultural commodities for market;" that being so employed they are excluded from the act by its exempting provisions.

The act expressly excludes, "any employee employed in agriculture." Section 213(a) clause 6. In Section 203, clause (f), it thus defines agriculture:

" 'Agriculture' includes farming in all its branches and among other things includes the cultivation and tillage of the soil, dairying, the production, cultivation, growing, and harvesting of any agricultural or horticultural commodities (. . . in section 1141j(g) of Title 12, as amended), the raising of livestock, bees, fur-bearing animals, or poultry, and any practices (including any forestry or lumbering operations) performed by a farmer or on a farm as an incident to or in conjunction with such farming operations, including preparation for

market, delivery to storage or to market or to carriers for transportation to market.''

It thus appears that ''Agriculture'' not only ''includes farming in all its branches and among other things includes the cultivation and tillage of the soil,'' but the harvesting of *''horticultural* commodities,''* etc. It is plausibly argued that work on nurseries, where not only flowers and shrubs, but trees of all kinds are cultivated and grown, is within these terms of exemption.

This court, in *Ginn* v. *Forest Nursery Co.,* 165 Tenn., 9, 52 S. W. (2d), 141, construing the farm or agricultural laborer exemption in the Workmen's Compensation Act (Code, Section 6856), held that an employee who was injured while using a spade, working for the nursery company on its place, where shrubs, evergreens, shade trees, etc., were grown, packed and shipped, was within such exemption.

It is plausibly argued that this decision, and the authorities cited in the opinion, is controlling here. The difficulty in so holding arises from the meagerness of the allegations of the bill touching the exact nature of the occupation of these particular complainants. The argument for complainants appears to be that the bill shows them to be employed, not in the farming or agricultural operations incident to the nursery business, but in the caring for, packing and shipping, etc., of trees, shrubs and plants purchased on the market, it being alleged that this merchandising at wholesale was the business of the defendant. This argument is thus presented on the brief of appellants:

''The nursery business and farming are two different things. The defendant buys shrubs, trees, plants, etc., care for them at its nursery and in its greenhouses (where it employs the complainants to labor), and attempts to

sell them to its customers. It does this on a wholesale scale. No distinction can be drawn between its activities in this work and the activities of the employer in the case of *Hein* v. *Ludwig,* 118 Pa. Super., 152, 179 A., 917, 918. In that case the inquiry was whether complainant was 'engaged in agriculture' within the meaning of the Compensation Act, 77 P. S. Pa., sec. 1, *et seq.* The defendant owned fifty acres of land upon which were two greenhouses. The defendant likewise operated a retail shop in a nearby town. 'Claimant's duties, which were confined to and about the greenhouses, included maintaining the proper temperature, providing the proper moisture, opening and closing the ventilators, planting, clipping, budding, tying up, cutting, and shipping the plants.' The Court had no difficulty in finding the claimant was not engaged in agriculture, for they said:

" 'Agriculture, in the usual and commonly accepted sense of the term, does not include the operation of commercial greenhouses; nor is an employee in charge thereof an agricultural worker. The operation of such greenhouses is more akin to industry than to agriculture. They produce under artificial conditions; while the raising of crops, the growing of fruit, and other similar agricultural activities are under natural conditions. They may be erected and operated practically anywhere a factory can be erected and operated. Such an enterprise is not one of those agricultural activities consisting of, or directly related, to the cultivation of the ground in the sense of husbandry. The fact that plants and flowers raised therein are products of the soil is not controlling, but rather that this is done under artificial conditions in a commercial plant.'

"The distinction drawn by the Pennsylvania Court is a very real one. Farming implies that the operator is

dealing with the natural products of the soil in a natural manner. The operation of a nursery and greenhouse, on the other hand, implies, as the Courts said, the artificial care of commodities under artificial conditions.''

Counsel also cite *Guerrero* v. *United States Fidelity & Guaranty Co.*, 128 Tex., 407, 98 S. W. (2d), 796, 798 (Texas Commission of Appeals) and quote therefrom the following:

''As concerns his business as a florist, in which D, was engaged in the growing of plants and flowers for sale, he was undoubtedly engaged in an agricultural pursuit . . . and those working for him in that capacity were· farm laborers.

''In the business of buying and selling nursery stock, none of which was raised or grown by him, but merely put into the ground temporarily for preservation, Derrick was not engaged in agriculture. In that capacity he was not tilling the soil or engaged in the growing of the shrubbery. In buying and selling the nursery stock we think he was engaged as a jobber or dealer in articles or things, just the same as if he had been selling feed-stuffs or plants and bulbs in a storeroom.''

The recitals of the bill are principally devoted to allegations intended to show the interstate character of the defendant's business and thus bring it within the Federal Act, a proposition not disputed. Little is contained touching the particular nature of the work in which these complainants were engaged, and this is the determinative issue of fact. We quote from the bill paragraphs II and III, wherein are found the only descriptions of the specific work in which complainants were employed:

''II. Defendant, McIntyre Floral Company, maintains a large nursery and green house in Davidson County, Tennessee. In interstate commerce it buys and

contracts for and has shipped to it many and varied items usual to the nursery business, consisting of shrubs, plants, trees, seeds, etc. It advertises nationally its ability and willingness to ship and sell such commodities in interstate commerce to anyone who may desire to purchase. It does do a substantial business by way of selling such commodities above named in interstate commerce, and does and will ship such commodities to any person who orders them and will pay the price thereof.

.    .    .    .    .    .    .

"III. Complainants were employees of the defendant Company in its wholesale business. Defendant likewise operates a retail flower establishment in the City of Nashville, but with this complainants were in no wise connected, and they do not base any rights, asserted herein upon the operation of said business.

"In each of the operations of the defendant Company set forth in paragraph II, complainants and the other employees of defendant, in its wholesale nursery business, were directly connected either in the receipt of the goods from interstate commerce or in their care while in defendant's possession, or in the preparation of them for reshipment in interestate commerce by the defendant."

As directly applicable to the character of work thus indicated, appellee invokes the concluding language of the definition of "Agriculture," in Section 203(f), above quoted, which expressly includes "horticultural commodities" and "any practices (including any forestry or lumbering operations) performed by a farmer or on a farm as an incident to or in conjunction with such farming operations, *including preparation for market,* delivery to storage or to market or to carriers for transportation to market." (Italics ours.)

It has been seen that the bill alleges that the defendant company was engaged in the operation (1) of "a large nursery and green house in Davidson County," and (2) "buys and contracts for and has shipped to it many and varied items usual to the nursery business, consisting of shrubs, plants, trees, seeds, etc.," and that the complainants were employed in each of these two operations.

Now, conceding that the allegations of the bill confine the work of the complainants to receiving, caring for and preparing these nursery products for shipment, we are unable to escape the conclusion that the work of complainants is brought within the exemption provisions of Section 213 by the concluding language of Section 203(f), "preparation for market, delivery to storage or to market or to carriers for transportation to market."

This construction of the act is consistent with the manifest reason underlying the exemption of employees in agriculture from the rigid requirements of the Wage and Hour Law, which rests on a recognition of the seasonal nature of the occupation. Horticulture, the branch of agriculture in which the nursery business operates, is subject to much the same uncertain varying weather, climatic and seasonal conditions as obtain generally in agriculture.

The judgment is affirmed.