JORDAN et al. v. STARK BROS. NURS-
ERIES & ORCHARDS CO., Inc.

Civil No. 34.

District Court, W. D. Arkansas, Fayetteville
Division.

June 18, 1942.

Hugh M. Bland, of Fort Smith, Ark., for plaintiffs.

Francis M. Curlee, of St. Louis, Mo., for defendant.

MILLER, District Judge.

The plaintiff, Edward Jordan, and twenty-six other individuals, filed their complaint against the defendant in which they seek to recover certain sums of money alleged to be due under Sections 6 and 7 of the Fair Labor Standards Act of 1938, Sections 206 and 207 of Title 29 U.S.C., 29 U.S.C.A. §§ 206, 207.

In due time the defendant filed a motion to dismiss, in which it alleged: "(a) The complaint shows on its face that defendant is and has been at all times engaged in agriculture, and that the plaintiffs employed by defendant were at all times employed in agriculture and are exempt from the provisions of the Fair Labor Standards Act of 1938, as provided in Section

13(a) (6) and Section 3(f) of the Act. (b) 29 U.S.C.A. §§ 213(a) (6) and 203(f). The complaint shows on its face that all of the work done by plaintiffs was performed by them in the pursuit of its general nursery business, which business is exempt from the operation of Sections 6 and 7 of the Fair Labor Standards Act."

Section 13(a) (6) of the Fair Labor Standards Act; Section 213(a) (6), Title 29 U.S.C., 29 U.S.C.A. § 213(a) (6), provides that the provisions of Sections 6 and 7 shall not apply with respect to "any employee employed in agriculture".

Section 3(f) of the Act; Section 203(f) Title 29 U.S.C., 29 U.S.C.A. § 203(f), provides: " 'Agriculture' includes farming in all its branches and among other things includes the cultivation and tillage of the soil, dairying, the production, cultivation, growing, and harvesting of any agricultural or horticultural commodities (including commodities defined as agricultural commodities in section 1141j(g) of Title 12, as amended), the raising of livestock, bees, fur-bearing animals, or poultry, and any practices (including any forestry or lumbering operations) performed by a farmer or on a farm as an incident to or in conjunction with such farming operations, including preparation for market, delivery to storage or to market or to carriers for transportation to market."

■ The interpretations promulgated by the Administrator of the Wage and Hour Division in the Department of Labor, although not binding on the court, are entitled to great weight. United States v. American Trucking Associations, 310 U.S. 534–539, 60 S.Ct. 1059, 84 L.Ed. 1345.

Interpretative Bulletin No. 14 issued by the Administrator in June, 1940, states:

"(e) The employees of a nursery who are engaged in the following activities are employed in 'agriculture';

"1. Sowing seeds and otherwise propagating, fruit, nut, vegetable and ornamental plants or trees, and shrubs, vines and flowers;

"2. Handling such plants, etc., from propagating frames to the field;

"3. Planting, cultivating, watering, spraying, fertilizing, pruning, bracing, and feeding the growing crop."

In the same bulletin the Administrator further said:

"(b) The term 'preparation for market' must be treated differently with respect to various commodities. The following activities, among others, when performed by a farmer, seem to be included within the term:

"9. Nursery stock.—Handling, wrapping, packaging, and grading."

A reading of the various interpretations contained in the bulletin discloses that the Administrator considers one engaged in the growing, propagating, and handling of nursery stock in greenhouses, etc., as being engaged in agriculture.

In Webster's New International Dictionary, Second Edition, "agriculture" is defined as follows: "The art or science of cultivating the ground, and raising and harvesting crops, often including also feeding, breeding and management of livestock; tillage; husbandry, farming; in a broader sense, the science and art of the production of plants and animals useful to man, including to a variable extent the preparation of these products for man's use and their disposal by marketing or otherwise. In this broad use it includes farming, horticulture, forestry, dairying, sugar making, etc."

The same authority defines "horticulture" as follows: "The cultivation of a garden or orchard; the science and art of growing fruits, vegetables, and flowers or ornamental plants. Horticulture is one of the main divisions of agriculture."

The Administrator also holds nursery products to be "horticultural commodities". Bulletin 14, supra.

■ If the plaintiffs were engaged in "agriculture" as defined by the Fair Labor Standards Act of 1938, they are exempt from the Wage and Hour sections of the Act. The term "agriculture" as defined in the Act includes the work of cultivating, producing, growing and harvesting of horticultural commodities and all work done as an incident to or in conjunction with such operations, including preparation for market, delivery to storage or to market or to carriers for transportation to market. Agricultural employees were exempted from the Act because agricultural labor was not subject to the usual evils of sweatshop conditions of long hours indoors at low wages. Living conditions of agricultural employees are different from those of the average factory employee and many agricultural employees in addition to their wages receive room and board or living quarters and usually have the benefit of a small

tract of land to cultivate as a garden. The Congress considered all of these conditions in providing that such employee should be exempt from the provisions of Sections 6 and 7 of the Act.

Paragraph 3 of the complaint alleges that the defendant "was engaged in importing both seedling and mature trees from the several States of the Union and collecting them at its place of business at Farmington, Arkansas, then, after receiving the said seedling tree which had been grown in other States from seeds planted there, the defendant would perform grafting operations upon them by cutting where the root and wood join and graft a scion into the root and wrap it and pack it away to callous. It was then taken out and planted, where it grew from one to two or three years and was then graded, prepared for shipment and shipped in interstate commerce to Louisiana, Missouri, and other States; that after the original had been changed in form into a given type of fruit tree by the defendant at its establishment at Farmington, Arkansas, by grafting and other allied processes said fruit trees were then sold, offered for sale, transported, shipped and delivered in interstate commerce from the defendant's plant at Farmington, Arkansas, to various points outside the State of Arkansas."

The allegations above set forth show that the plaintiffs were engaged in agriculture. The "preparation for market, delivery to storage or to market or to carriers for transportation, to market" were incident to the principal farming operation, the production, cultivation and growing of horticultural commodities. Bowie v. Gonzalez, 1 Cir., 117 F.2d 11; Walling, Adm'r, v. Rocklin et al., D.C.N.D.Iowa, 44 F.Supp. 355; Dye et al. v. McIntyre Floral Co., 176 Tenn. 527, 144 S.W.2d 752.

■ In paragraph 4 of the complaint the plaintiffs allege: "During all of the time herein complained of, said above named defendant was engaged in the general nursery business; and in pursuance of carrying on said business, said defendant purchased various sundry kinds of nursery stock from firms, individuals and various sundry establishments which firms, individuals and establishments were not, and are not, in the general vicinity of said defendant's plant at Farmington, Arkansas, and transported said nursery stock from the said point of purchase to the said defend-

ant's plant at Farmington, Arkansas, and plaintiff alleges that said nursery stock was stored by said defendant in its said plant at Farmington, Arkansas, and there properly cared for by said defendants until sufficient orders were obtained to justify shipment; that said defendant would then send said orders, from its office, to these plaintiffs, who were located in the same building; that the plaintiffs, as employees of the defendant, would receive said orders and would then proceed to label, wrap and tag said orders, and to otherwise prepare and assist in loading said above named nursery stock for shipment."

The remainder of paragraph 4 alleges that "some cherry trees, plum trees and ornamental trees were shipped in from other States by truck and were a finished product which these plaintiffs graded, stored and shipped out to the various States of the Union".

There are other allegations to the effect that plaintiffs performed labor in storing, wrapping and shipping finished products which the defendant purchased from other producers.

The definition of "agriculture" found in the Act is controlling, but the work that plaintiffs did on the "finished products" purchased by defendant from other producers was not done in the "production, cultivation, growing and harvesting" of any horticultural commodity created by the farming operations of defendant.

■ The broad definition of "Agriculture" should not be extended by construction to exempt laborers from the provisions of the Act and unless the employee is in fact "employed in agriculture" he should not be denied the benefit of the Act. Farming or agriculture as commonly and generally understood do not include the operation of a commercial nursery.

■ The Congressional statutory definition is certainly not based upon the experience, knowledge and practice of the ordinary farmer. But for the statutory definition of "Agriculture" it should be held that all the work done by plaintiffs is covered by the Act. Certain it is that the plaintiffs were "engaged in commerce or in the production of goods for commerce" when they were working on the "finished products" purchased by the defendant from others, and defendant is liable for the minimum wage and overtime compensation for the weeks in which plaintiffs

spent any of their time at such labor, however small the percentage of horticultural commodities purchased may be with respect to the total volume handled.

 The complaint is not specific as to the time or number of weeks the plaintiffs were so engaged, but the facts may be established at the trial. Plaintiffs should also be prepared to meet the exemption allowed under Section 7(b) (3) of the Act, Section 207(b) (3), Title 29 U.S.C., 29 U.S.C.A. § 207(b) (3), since the Administrator has found that the storing and packing of nursery stock is seasonal in nature and has made available for employers engaged therein the partial exemption from the overtime provisions of the Act for a period of fourteen weeks in the year. See, Regulation, Part 526, dated December 2, 1940, dealing with Section 7(b) (3) exemptions. 5 Fed.Reg. 4801.

The motion to dismiss is denied.