**WALLING, Administrator of Wage and Hour Division, United States Department of Labor, v. ROCKLIN, et al.**

No. 12393.

Circuit Court of Appeals, Eighth Circuit.

Dec. 28, 1942.

Kenneth P. Montgomery, Regional Atty., U. S. Department of Labor, of Kansas City, Mo. (Irving J. Levy, Acting Sol., Mortimer B. Wolf, Asst. Sol., Edward J. Fruchtman and Henry A. Silver, all of Washington, D. C., Attys., on the brief), for appellant.

Louis S. Goldberg, of Sioux City, Iowa (Lyman W. Sherwood, of Chicago, Ill., on the brief), for appellees.

Before GARDNER, WOODROUGH, and THOMAS, Circuit Judges.

GARDNER, Circuit Judge.

This is an appeal from a judgment dismissing appellant's complaint seeking an injunction to restrain appellees from violating §§ 15(a) (1), 15(a) (2), and Sec. 15 (a) (5) of the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq. We shall refer to the parties as they appeared in the trial court.

It was alleged in plaintiff's complaint that the eight individual defendants were co-partners doing business as Rocklin, Lehman & Co., in Sioux City, Iowa, engaged in the production of floral designs and other decorative items, and in the distribu-

tion and sale thereof in commerce. That the eight employees working in the Pierce Street shop of defendants had not been paid either the minimum wages or overtime compensation as required by Sections 6 and 7 of the Fair Labor Standards Act, and "that defendants had shipped in Interstate Commerce goods produced by these employees and had not kept records of their wages and hours as required by the Act and the regulations issued pursuant thereto."

Defendants answered that they were not subject to the Act but were wholly exempt therefrom under Section 13(a) (6) and Section 3(f), and that they and all their employees including those employed at 507 Pierce Street, were employed in agriculture; that their place of business at 507 Pierce Street, Sioux City, Iowa, was merely an incident to their extensive greenhouse and flower garden business which they conducted in the outskirts of Sioux City, partly within and partly without the city limits.

The question presented to the lower court and renewed here is whether the employees of defendants at their 507 Pierce Street location are employed in agriculture within the meaning of the exemption contained in the Act. It appears from the evidence that defendants have for some years operated the Morningside Greenhouse and Gardens in the outskirts of Sioux City, Iowa; that these greenhouses and gardens are larger than all others in Sioux City combined. They comprise ten acres of ground under glass and five acres of flower garden in the open. The investment in land, greenhouses and other buildings, and improvements on this property is about $40,000 exclusive of the value of the crops under cultivation. They employ twenty-two persons at the gardens and they produce and grow plants and every kind of flower in season except lily of the valley. Some of the plants are cultivated entirely in open gardens while others are nurtured in the greenhouses and then transplanted to the open grounds and later re-transplanted to the greenhouse for final cultivation. These horticultural products are grown for the retail market and the wholesale market. Substantially all the plants grown at the greenhouses and gardens are sold and delivered from the greenhouses and gardens, but the balance of the products there grown is transferred by trucks of defendants to the building at 507 Pierce Street. The supply of the products maintained at 507

Pierce Street is ordinarily restricted to about $200 in value at any one time. The Pierce Street location consists of the street floor and basement of a three-story building about four miles from the greenhouses, the portion of the building used by the defendants being rented. The large part of the fixed equipment in the building is owned by the lessor, and the total investment of the defendants in the 507 Pierce Street station is less than $3,000. Through this Pierce Street station defendants sell the balance of their flowers and other horticultural products grown by them. The products are sold at wholesale and retail and delivered by defendants to the trade in the same form in which the product comes to Pierce Street from the greenhouses without designing or other rearrangement except as to some of the products which are for a brief interval placed in the refrigerators at Pierce Street for hardening before shipment. The sales at wholesale constitute 60% or more of the total sales of all the products sold by defendants; 90% or more is grown in their own greenhouses and gardens. The balance comes from what is designated as "outside purchases". These purchases are made only when a blizzard or other adverse weather conditions disappoint, limit or delay the greenhouse products; and are made from other greenhouses. The product so purchased is resold, such resales being made at or below cost. The purchases so made are for the purpose of enabling defendants satisfactorily to keep its wholesale customers supplied when they are in need so as to hold the trade of such customers.

The services performed by the eight employees of the defendants at 507 Pierce Street are as follows: two are truckers who transfer the products from the gardens and greenhouses to 507 Pierce Street and who make deliveries from Pierce Street both to the retail and wholesale trade; two other employees are packers who wrap the products for the wholesale and retail trade; two others are employed as designers, who arrange the flowers in floral designs. More than 70% of all retail sales are sales within Iowa. Both the designers and packers at times wait on the retail trade and make sales to retailers at 507 Pierce Street. The two remaining employees are young women, one of whom sells at retail and does a small amount of bookwork and stenographic work, some of which is directly from the greenhouses; the other is in charge of the office and does

all the bookkeeping and keeps all of the records including all of the greenhouse accounting.

The court made findings embodying substantially all the evidentiary facts and found that about 90% or 95% of all sales by defendants were their own production, that it was found necessary to purchase in order to supply customers in cases of frosts, storms and other emergencies, about 5% to 10% of their products handled. The court then found as an ultimate fact that "defendants are exclusively engaged in agriculture in the production of flowers, plants, flowering shrubs, ornamental grasses, etc., necessary to meet the wants of purchasers of flowers, floral designs and tributes". The court concluded as a matter of law "that defendants are exclusively engaged in agriculture as defined by the Fair Labor Standards Act" and "that defendants by reason of their exclusive engagements in agriculture are exempted from the provisions of the Fair Labor Standards Act relating to minimum wage and minimum hours of employment of the employees and the necessity of reporting under said Act". The court accordingly entered judgment dismissing plaintiff's complaint.

Plaintiff on the appeal charges that the court erred in holding that the employees working in the Pierce Street Shop are engaged in agriculture within the meaning of the Fair Labor Standards Act. Section 3(f) of the Act defines agriculture to include "farming in all its branches and among other things includes * * * the production, cultivation, growing, and harvesting of any agricultural or horticultural commodities * * * and any practices * * * performed by a farmer or on a farm as an incident to or in conjunction with such farming operations, including preparation for market, delivery to storage or to market or to carriers for transportation to market".

■ Defendants contend and the trial court was of the view that they are engaged in the production of horticultural commodities as a single integrated unit, and that they are farmers within the meaning of the statute. The court found as an ultimate fact that the defendants including their employees at Pierce Street were, exclusively engaged in agriculture. This finding should not be disturbed unless clearly erroneous. Rule 52(a), Federal Rules Civil Procedure, 28 U.S.C.A. following section

723c. The Pierce Street shop or store is maintained by defendants as a part of their business of producing and disposing of their floral products. It is not maintained as a separate enterprise but only in connection with and incidental to the general enterprise in which the defendants are engaged. The exemption includes any practices performed by a farmer as an incident to or in conjunction with his farming operations including preparation for market, delivery to storage, or to market, or to carriers for transportation to market.

It is conceded by plaintiff that defendants are farmers in their operations in the greenhouse but it is said they lose that character so far as the employees in the Pierce Street shop are concerned because of the character of the business there transacted. The nature of the work done at this shop should not, we think, be considered as segregated from the entire enterprise. Everything that is there done is "an incident to" or "in conjunction with" the agricultural enterprise which is being carried on by defendants. The trial court embodied in its conclusions of law certain definitions quoted from Webster's New International Dictionary as follows: "agriculture. n. The art of science of cultivating the ground, and raising and harvesting crops, often including also feeding, breeding, and management of livestock; tillage, husbandry; farming; in a broader sense, the science and art of production of plants and animals useful to man, including to a variable extent the preparation of these products for man's use and their disposal by marketing or otherwise. In this broad use it includes farming, horticulture, forestry, dairying, sugar making, etc."

"Horticulture n. The cultivation of a garden or orchard; the science and art of growing fruits, vegetables, and flowers or ornamental plants. Horticulture is one of the main divisions of agriculture." Walling v. Rocklin, D.C., 44 F.Supp. 355, 356.

■ We are referred to the Congressional Record and Congressional Debates but we think we need not resort to this source because it manifestly appears to be the purpose of Congress to treat the practices here involved as agricultural labor is treated. The raw products were at most being prepared for market in connection with the business of producing them. As already observed the lower court specifically found that "defendants are exclusively engaged in agriculture in the production

of flowers, plants, flowering shrubs, ornamental grasses, etc., necessary to meet the wants of purchasers of flowers, floral designs and tributes". The court also found that the greater portion of the greenhouse production is prepared for market, distribution and sale from 507 Pierce Street. These findings, we think, are sustained by undisputed evidence and the legitimate inferences reasonably flowing therefrom.

Appellant cites Calaf v. Gonzales, 1 Cir., 127 F.2d 934, 937, in support of his contention that the employees at the Pierce Street shop are not engaged in work incident to or in conjunction with farming operations. But in that case the court among other things said: "We are not concerned here with the problem of farmers preparing their goods for market or sending their goods to market, or to storage, or to carriers to transport from farms to market. These are clearly exempt under the provisions of the Act."

The Administrator of the Wage and Hour Division charged with the duty of administering this Act has from time to time issued Interpretative Bulletins. In Bulletin No. 14 the Administrator includes greenhouses as within the exemption, whether the products are grown in enclosed houses or in the open field. In defining the word "practices" as used in the Act, the Administrator in this Bulletin says: "It makes no difference whether they are performed on or off the farm if performed by a farmer" and that it "involves many diverse matters". In Section 10(b) in defining the expression "preparation for market" he includes such activities as packing, storing, handling, drying, wrapping, canning, ginning, packaging, and grading, as to various commodities. In Section 10(f), in defining "other practices", he states: "The actual selling of the agricultural or horticultural commodities, etc., is such a practice," within the exemption. In Section 12 of the Bulletin it is said: "We have received inquiries concerning office help—secretaries, clerks, bookkeepers, etc.—night watchmen, maintenance workers, engineers, etc., who are employed by a farmer or on a farm in connection with the activities described in the definition of 'agriculture' contained in Section 3(f). In our opinion such employees are exempt." We think the decision appealed from is in entire accord with the administrative interpretation of the Act.

It is, however, strenuously argued that defendants have placed themselves beyond the protection of this exemption because they handle flowers purchased by them from other greenhouses. The court found, and the evidence shows, that about 90% to 95% of all sales by defendants is their own production. These purchases are made necessary because of emergencies and are not otherwise made nor do they tend in any manner to produce directly any income to the defendants. The purchases are made for the purpose of serving the requirements of their trade and holding their business. The extent to which this is done is negligible and this practice cannot, we think, convert the business transacted at 507 Pierce Street into an independent business. The business there transacted being an incidental and not an independent business, the occasional purchase and sale of products necessitated by reason of storms, frost, and other emergencies, caused by the natural elements as shown by the record is, we think, quite consistent with the theory that defendants are primarily and exclusively "engaged in agriculture in the production of flowers, plants, flowering shrubs, ornamental grasses, etc., necessary to meet the wants of purchasers of flowers and floral designs and tributes". Being so engaged the employees at 507 Pierce Street are likewise so engaged and hence are within the exemption as employees employed in agriculture.

The judgment appealed from is, therefore, affirmed.