## DAMUTZ v. WM. PINCHBECK, Inc.

### Civ. No. 1610.

District Court, D. Connecticut.

July 12, 1946.

James F. Rosen, of New Haven, Conn., for plaintiff.

George C. Conway, of Guilford, Conn., for defendant.

SMITH, District Judge.

This is an action brought by one who was employed as a fireman in a commercial greenhouse for unpaid overtime compensation alleged to be due him under the Fair Labor Standards Act of 1938, Act of June 25, 1938, c. 676, 52 Stat. 1060, 29 U.S. C.A. § 201.ff. The plaintiff was concededly paid on a straight-time basis and worked hours in excess of the maxima established by the Fair Labor Standards Act so that if he is within the coverage of the Act he is entitled to judgment since the defendant's

business is, in substantial part, in (interstate) commerce.

Defendant relies upon the agricultural exemptions of the Act, claiming that the plaintiff is either an agricultural employee under Section 13(a) (6) or an employee engaged in processing agricultural commodities within the area of production under 13(a) (10) of the Act. Section 13(a) (6) provides that the Act shall not apply with respect to any employee employed in agriculture. Section 3(f) defines agriculture as follows: "'Agriculture' includes farming in all its branches and among other things includes the cultivation and tillage of the soil, dairying, the production, cultivation, growing, and harvesting of any agricultural or horticultural commodities (including commodities defined as agricultural commodities in section 1141j(g) of Title 12, as amended), the raising of livestock, bees, fur-bearing animals, or poultry, and any practices (including any forestry or lumbering operations) performed by a farmer or on a farm as an incident to or in conjunction with such farming operations, including preparation for market, delivery to storage or to market or to carriers for transportation to market."

Section 13(a) (10) exempts any individual " * * * employed within the area of production (as defined by the Administrator), engaged in handling, packing, storing, ginning, compressing, pasteurizing, drying, preparing in their raw or natural state, or canning of agricultural or horticultural commodities for market, or in making cheese or butter or other dairy products;"

The first exemption, taken literally, applies to the plaintiff, for his work is essential in the growth of the product which the defendant sells in (interstate) commerce, that is, the cut flowers. Horticulture, which includes the growing of flowers, is specifically included as being within the definition of agriculture in the Act, workers in which are exempt from the Act's coverage. This type of growth under glass with steam heat is, of course, far removed from our normal conception of the growth of products by a farmer on the ordinary farm. However, there is actual growth involved in this defendant's business, over a period of months before the first product is cut from the plants, and over a period of years before the plants are discarded. It is questionable whether the Congress actually had in mind any such highly mechanized and artificial type of growing of horticultural products when it adopted the Act. However, the language is broad enough to cover this type of production and it may be that the Congress considered the probable difficulty in administration of attempting to distinguish such an operation from the traditional, less mechanical, type of farming. Certainly it intended to include in the agricultural exemption men who were engaged on the ordinary type of farm in types of work more like that of their brothers in the city factories than like that of the agricultural laborer of fifty years ago. The Administrator has recognized this in Interpretative Bulletin No. 14, p. 10, par. 12.

It does not appear that the Congress had in mind, in its adoption of the definition of agriculture, following either similar wording in another act or acts or the decisions of the courts settling the interpretation of any such other statutory definition. Rather it deliberately made the definition broader than any other. Senator Black, 81 Congressional Record, p. 7648:

"The bill specifically and unequivocally excludes certain industries and certain types of business from its scope and effect. It specifically excludes workers in agriculture of all kinds and of all types. There is contained in the measure, perhaps, the most comprehensive definition of agriculture which has been included in any one legislative proposal.

"We have placed together in the bill definitions of agricultural work which have been fixed from time to time in other legislative enactments, and in addition to that we have drawn liberally from Mr. Webster's definition of agriculture."

The decisions interpreting the Unemployment Tax Act, 26 U.S.C.A. Int.Rev. Code, § 1600 et seq., Social Security Act,

42 U.S.C.A. § 301 et seq., Bankruptcy Act, 11 U.S.C.A. § 1 et seq., and other legislation are not, therefore, very helpful in this situation, and it does not appear to be material that the parties in this case may have considered that the plaintiff was not exempt from the provisions of those Acts under their particular agricultural employee definitions.

 The plaintiff is literally within the exemption. While exemptions from remedial legislation are to be narrowly construed, the Congress took unusual pains to make the language of this exemption broad rather than narrow. We must conclude that it intended to exempt all those who, as is the plaintiff, are within the ordinary meaning of the language of the exemption.

What little precedent exists appears to uphold the inclusion of the plaintiff within the exemption. See Walling, Admr. v. Rocklin, 8 Cir., 1942, 132 F.2d 3; Jordan v. Stark Bros., D.C.W.D.Ark., 1942, 45 F.Supp. 769, 771; and of course we are bound to give weight to the interpretation of the Administrator. See Interpretative Bulletin No. 14, p. 6, par. 5 (d) and p. 10, par. 12.

The second claimed ground for exemption is without merit. Plaintiff is engaged in furnishing heat to the greenhouses, apparently including the packing-room. Whether during all the months in the year the temperatures in the packing-room and greenhouses are maintained at the same level is not clear. In any case, the heating of the rooms where the plants are growing is not within the terms of 13 (a) (10) as preparing in their raw or natural state agricultural commodities for market. It is apparent from the discussion of Senator Schwellenbach, author of that provision in the Act, during debate on the bill, that the exemption was intended to apply only to such activity as washing and grading the products after full growth had been attained.

The plaintiff also claims coverage under the Act because of the purchase of cut flowers by the defendant from Dowd and their sale on a commission basis, a business outside the exemptions pleaded. The amount of these purchases and sales is, however, small, one-half of one per cent up to 1941, negligible since, and it has not been established that these sales were interstate, nor that plaintiff performed any duties in connection with their purchase, packing and sale.

It would be desirable to extend the coverage of the Act to include those who work in such occupations as the plaintiff's as well as to include all those employed in commercial nurseries or greenhouses, since the conditions of their employment, particularly if they are located near industrial areas, are more nearly those of workers in the factories than those of workers on the ordinary farm. The Congress, however, has not included them and it is not for the Court to amend the Act, however desirable the amendment may seem.

The plaintiff must be held exempt from the provisions of the Act under Section 13 (a) (6) as an agricultural employee.

Judgment may be entered for the defendant to recover its costs.