Bobby HEARNSBERGER, Appellant,

v.

L. E. "Cotton" GILLESPIE, d/b/a Eudora Livestock Auction Company, Inc., and Eudora Livestock Auction Company, Inc., Appellees.

No. 20254.

United States Court of Appeals, Eighth Circuit.

Dec. 30, 1970.

Silas H. Brewer, Jr., Youngdahl, Sizemore, Brewer, Forster & Uhlig, Little Rock, Ark., for appellant.

Sam Robinson, Little Rock, Ark., for appellees.

Peter G. Nash, Sol. of Labor, Bessie Margolin, Associate Sol., Carin Ann Clauss, Donald S. Shire, Anastasia T. Dunau, Attys., U. S. Dept. of Labor, Washington, D. C., Beverley R. Worrell, Regional Sol., for James D. Hodgson, Secretary of Labor, U. S. Dept. of Labor, as amicus curiae.

Before MATTHES, Chief Judge, LAY, Circuit Judge, and REGISTER, Chief District Judge.

REGISTER, Chief District Judge.

This action was brought by appellant Hearnsberger under Section 16(b) of the Fair Labor Standards Act [1] to recover unpaid minimum wages, overtime compensation, liquidated damages and reasonable attorney's fees and costs.

Defendants denied that Hearnsberger was employed by each of them during the period in question, denied any liability to him under the Act, and asserted that during the time he had worked as alleged in the Complaint "he was an agricultural employee." Following trial the Court made certain findings which will be hereinafter referred to and entered judgment dismissing the complaint. From such judgment this appeal was taken. Pursuant to request of the Secretary of Labor (who is charged by statute with responsibility for the administration and enforcement of the Act), this Court permitted him to submit a brief as amicus curiae. We express our gratitude to the Secretary for his assistance.

During the period of time in question (March 3, 1967 until November 25, 1968) defendant L. E. "Cotton" Gillespie individually owned and operated a farm in Chicot County, Arkansas, where he primarily grazed his own cattle on an approximately 600-acre tract. The total area of the farm (or ranch) was 1677 acres. During the period in question Hearnsberger was the only permanent employee. Wheat was planted in the fall and this was grazed during the winter and early spring; in May or June, hay grazer or Sudan was planted and this was grazed into the summer. Hearnsberger supervised the planting of the wheat and Sudan grass, during which time he had the help of two or three "hands," and machinery. Otherwise he had the responsibility of looking after the cattle, "checking" them daily to see that they weren't sick, doctoring them if they were sick, and keeping up the fences. Gillespie furnished a truck, which he owned personally, to appellant for use in his employment. Appellant was paid a salary of $85 per week throughout the period of time in question.

During the same period of time Gillespie was the sole stockholder (except for single shares of stock owned by his wife, and bookkeeper, respectively) of defendant corporation, Eudora Livestock Auction Company, Inc., which owned and operated a cattle auction barn in Chicot County, Arkansas, in the vicinity of his farm. Some of the cattle sold at the auction barn were transported for sale from neighboring states, and some of the cattle sold there were transported out-of-state. Customers traveled from out-of-state to attend the sales conducted at the barn. The barn and equipment was substantial—the barn was 1000 feet long, was equipped with pens, scales, an auction ring, a loudspeaker system, a cafe, a business office, vehicles with shortwave radios, tractor and other necessary items. There were six to eight regular employees. Auctions were conducted Friday afternoon of each week, and continued

1. Act of June 25, 1938, c. 676, 52 Stat. 1061, as amended; 29 U.S.C. 201 et seq.

into the evening if necessary to complete the sale.

The busiest workdays at the barn were Thursday, when cattle began to be received for sale, and Friday, the day of the auction. The regular employees at the barn cleaned up the barn on Monday, Tuesday and Wednesday of each week, and usually took some time off during those days. On Saturday there was work with some of the livestock that had been sold on Friday—such as hauling cattle out from the barn.

Hearnsberger testified that he worked an average of twelve hours a day, six days a week, throughout this period. His testimony was the only evidence submitted on behalf of the plaintiff. Gilmore Whittington, the supervisor and person in charge of the sale operations at the barn, testified that Hearnsberger often worked several hours (from two or three, to five hours) on Thursdays, helping pair cows and calves. He testified that on some Thursdays Hearnsberger's help was not needed "and he went about his business." Hearnsberger also testified that he would come to the barn "Usually about Friday at noon or a little after, and we would help sort cattle and help pen cattle and until the sale was over, and then we would check cattle and load cattle." Whittington testified that Hearnsberger worked at the barn two or three Fridays a month, and hauled some cattle from the barn two or three Saturdays a month. He testified that usually the work on Saturdays was completed by noon. During one six-week period of time, when there was nothing to do at the farm, Hearnsberger worked full-time at the barn on Thursdays and Fridays. His work at the barn during this time included unloading, sorting, penning, checking, branding, feeding, vaccinating, de-horning, tagging and loading cattle. However, his work was found to be unsatisfactory, and was discontinued. In substance, Mr. Whittington's testimony was corroborated by Mr. Gillespie.

During the first three days of each week Mr. Gillespie was away from the farm and barn a great deal, on matters incidental to the auction business. During those days, Hearnsberger was pretty much his own boss and during much of the year his duties did not require full-time service. He had quite a bit of free time, had the use of the truck for his own purposes, and did some work for himself.

During the period involved, Hearnsberger's $85 per week salary was paid by check from the auction company, and then charged to Gillespie personally. Many of the farm expenses were paid in similar manner, for purposes of convenience.

The trial court's judgment of dismissal was based in part upon its finding and ruling that "plaintiff was a regular employee on the cattle farm * * *" and that "plaintiff has failed to establish by a preponderance of the evidence that he was an employee of Eudora Livestock Auction Company." Appellant contends that such finding and ruling is a "fundamental error of law," compelling reversal, and asserts that "identification of plaintiff's 'regular' *employer,* rather than analysis of plaintiff's *work duties,* was the court's erroneous touchstone for determining whether plaintiff was employed in agriculture."

Section 13 of the Act (29 U.S.C.A., Sec. 213, captioned "Exemptions") provides, in part:

"(a) The provisions of sections 206 and 207 (the minimum wage and overtime provisions) shall not apply with respect to * * * (6) any employee employed in agriculture * * *."

In Section 3(f) of the Act (29 U.S.C.A., Sec. 203(f)), "agriculture" is defined as follows:

"(f) 'Agriculture' includes farming in all its branches and among other things includes the cultivation and tillage of the soil, dairying, the production, cultivation, growing, and harvesting of any agricultural or horticultural commodities (including commodities defined as agricultural commodities in section 1141j(g) of Title 12), the raising of livestock, bees, fur-bearing ani-

mals, or poultry, and any practices (including any forestry or lumbering operations) performed by a farmer or on a farm as an incident to or in conjunction with such farming operations, including preparation for market, delivery to storage or to market or to carriers for transportation to market."

While the trial court made no specific finding that appellant was within the exemption, it did find that he "was a regular employee on the cattle farm and was paid as such."

■ It is well established that the burden of proving an exemption from the Act rests upon the defendants. Idaho Sheet Metal Works v. Wirtz, 383 U.S. 190, 86 S.Ct. 737, 15 L.Ed.2d 694; Mitchell v. Kroger Co., 248 F.2d 935 (8th Cir. 1957). Exemptions are to be narrowly construed against employers seeking to assert them. Mitchell v. Kentucky Finance Co., 359 U.S. 290, 295, 79 S.Ct. 756, 3 L.Ed.2d 815; Gilreath v. Daniel Funeral Home, 421 F.2d 504, 508 (8th Cir. 1970). Exempt status will be limited to those situations that "plainly and unmistakably" come within the terms and spirit of Section 13 exemption provisions. Arnold v. Ben Kanowsky, 361 U.S. 388, 392, 80 S.Ct. 453, 4 L.Ed.2d 393. While the record discloses that the major part of Hearnsberger's work involved his duties at the farm, defendant Gillespie's testimony establishes that appellant performed a significant and substantial amount of work at the auction barn almost every week throughout the period involved. Virtually all of appellant's activities at the barn were unrelated to the defendant's farm operations, and were clearly nonexempt. "The only activity as to livestock listed within the 'primary' meaning of agriculture is 'the raising of livestock.'" In Walling v. Friend, 156 F.2d 429, 432 (8th Cir. 1946), this Court stated, "Clearly defendants' (livestock auction) employees are not engaged in the raising of livestock, * *." Neither did such activities constitute agriculture in its secondary sense, in that they were not "practices performed by a farmer or on a farm as an incident to or

in conjunction with such farming operations." See Mitchell v. Hunt, 263 F.2d 913 (5th Cir. 1959); and Farmers Reservoir & Irrigation Co. v. McComb, 337 U.S. 755, 762 and 763, 69 S.Ct. 1274, 93 L.Ed. 1672. In the latter case the Supreme Court specifically pointed out, 337 U.S., at page 762 et seq., 69 S.Ct., at page 1278, that the definition of agriculture in Sec. 3(f) had two branches—first a "primary meaning" which includes "farming in all its branches," and a secondary broader meaning which includes "any practices, whether or not themselves farming practices, which are performed either by a farmer or on a farm, *incidently to or in conjunction with*" farming operations within the primary definition. (Emphasis added.)

■ We agree with appellant's argument that it was the work duties of Hearnsberger, not the place of his employment, that determines whether he was covered by the Act. This Court, speaking through Chief Judge Matthes in *Gilreath,* supra (which involved the interpretation of certain provisions of the Act), stated, at page 510 (421 F.2d):

"Coverage under the Fair Labor Standards Act, however, is dependent upon the character of the activities of each individual employee, not upon the nature of the employer's business."

And in Chambers Construction Company v. Mitchell, 233 F.2d 717, at page 720, this Court said:

"Appellants assert, correctly, that 'the nature of the employer's business is not determinative, the application of the Act depending upon the character of employees' activities and not the nature of the employer's business."

■ The Administrator's Interpretative Bulletin (29 C.F.R. 780.106) provides, in pertinent part, as follows:

"Section 13(a) (6) exempts 'any employee employed in * * *'. It is clear from this language that it is the activities of the employee rather than those of his employer which ultimately determine the application of the exemption."

"It is well established that the interpretative regulations issued by the Secretary of Labor are generally valid and binding, as a reasonable exercise of delegated authority." *Gilreath,* supra, 421 F.2d at page 509. See, also: Skidmore v. Swift & Co., 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124.

Further, the criteria of 29 C.F.R., Sec. 780.110 (which we consider to be a reasonable and proper construction of the applicable provisions of the Act), issued by the Secretary of Labor, states:

"Where an employee in the same workweek performs work which is exempt under this section 13(a) (6) and also engages in work to which the Act applies, not exempt under this or any other section of the Act, he is not exempt that week, and the wage and hour requirements of the Act are applicable * * *."

Section 13(b) (13) of the Act, 29 U.S.C.A., Sec. 213(b) (13), exempts from the overtime requirements of the Act:

"Any employee with respect to his emment in agriculture by a farmer, notwithstanding other employment of such employee in connection with livestock auction operations in which such farmer is engaged as an adjunct to the raising of livestock, either on his own account or in conjunction with other farmers, if such employee (A) is primarily employed during his workweek in agriculture by such farmer, and (B) is paid for his employment in connection with such livestock auction operations at a wage rate not less than that prescribed by section 206(a) (1) of this title."

Consideration of only one of the requirements contained in this Section is necessary to demonstrate that appellant is not exempt from the overtime requirements of the Act by virtue thereof. The auction operations were clearly, under the evidence, not "an adjunct" to the raising of livestock. In pertinent part, the Secretary of Labor's interpretative regulation (29 C.F.R., Sec. 780.217) provides:

"The livestock auction operations referred to in section 13(a) (16) are those engaged in by the farmer 'as an adjunct' to the raising of livestock. This phrase limits the relative extent to which the farmer may conduct livestock auctions and claim exemption under section 13(a) (16). To qualify under the exemption provision, the auction operations should be an established part of the farmer's raising of the livestock and subordinate to it. * * *."

Appellant (and the Secretary of Labor) correctly assert that Hearnsberger, during the period in question, was an employee of Eudora Livestock Auction Company, Inc. From the undisputed evidence we are satisfied that he must be considered and treated as a joint employee of Gillespie, individually, and the Auction Company, so as to require that his hours of employment be combined and overtime paid on any excess over forty hours per week. Section 203 of the Act (29 U.S.C.A.) sets forth the definitions of specific terms used in the Act. In pertinent part, they are as follows:

"Sec. 203. Definitions

As used in this chapter—

* * * * * *

(d) 'Employer' includes any person acting directly or indirectly in the interest of an employer in relation to an employee * * *.

(e) 'Employee' includes any individual employed by an employer.

* * * * * *

(g) 'Employ' includes to suffer or permit to work."

From the evidence heretofore related, it is clear that appellant performed work duties (activities) both at the farm and at the barn; that his services at the barn were made available by Gillespie who admittedly "owned both operations"; that Gillespie, individually, was acting in the interest of the Auction Company with respect to its employment of appellant; that appellant was paid for all of his work performed in both of Gillespie's operations by a single pay-

check drawn on the barn's account; and was "suffer(ed) or permit(ted) to work" at the barn. Factually, the case before us is very similar to Wirtz v. Hebert, 368 F.2d 139 (5th Cir. 1966), which involved an individual employer who owned and operated a livestock auction barn as a sole proprietorship and who was also the president and principal stockholder of a corporation that operated a similar business approximately 100 miles away. The employee was engaged by the employer to work at his auction barn on a full-time basis, but the employer made him available to the corporate auction barn one day each week. The Court therein held (at page 142) that "The undisputed facts here, in the light of § 3 (d) of the Act, make out a case of joint employment. To hold otherwise would do violence to the clear policy of the Act that overtime shall be paid for a work week longer than forty hours." The Court therein further held (page 141) that "There was an indirect if not a direct interest between the employers here," and thus came within the statutory definition of "employer," and cited Mitchell v. John R. Cowley & Bros., Inc., 292 F.2d 105 (5th Cir. 1961), as authority for the statement that "This circuit recognizes the applicability of the Act to an employee occupying the status of a joint employee of two or more employers, with the result that his hours must be aggregated for overtime pay purposes." See, also, Chambers Construction Company, supra, 233 F.2d at page 724. This position of the appellant and of the Secretary is thus firmly sustained by the Act and by case law, and is in accord with the Administrator's Interpretative Bulletin on Joint Employment Relationship under the Act (29 C. F.R. 791.2(b)), which provides that work performed for two or more employers, either simultaneously or at different times during the same workweek, is to be treated as one employment for purposes of the Act under the following circumstances: "(2) Where one employer is acting directly or indirectly in the interest of the other employer (or employers) in relation to the employee; * * *."

Lastly, appellant (and the Secretary) contend that the trial court's specific finding and order "That the plaintiff did not work for the defendants a sufficient number of hours in any week to entitle him to any additional compensation under the provisions of the Fair Labor Standard Act of 1938 as amended" is erroneous as a matter of law and requires reversal. We interpret the word "defendants," as it appears in the finding and order, to include both Gillespie personally, and the Auction Company, they being the defendants in this action.

The standard of proof required in this kind of a case was prescribed by the Supreme Court of the United States in Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515. In that decision the Supreme Court stated (pp. 686–687, 66 S.Ct. p. 1192):

"An employee who brings suit under § 16(b) of the Act for unpaid minimum wages or unpaid overtime compensation, together with liquidated damages, has the burden of proving that he performed work for which he was not properly compensated. * * * Due regard must be given to the fact that it is the employer who has the duty under § 11(c) of the Act to keep proper records of wages, hours and other conditions and practices of employment and who is in position to know and to produce the most probative facts concerning the nature and amount of work performed."

The Court further stated (pp. 687–688, 66 S.Ct. p. 1192) that in a situation where the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes,

"We hold that an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as

a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate."

That Court further commented (p. 688, 66 S.Ct. p. 1193) that in a case in which the employer had not kept the records as required, he

"* * * cannot object to the payment for the work on the most accurate basis possible under the circumstances. Nor is such a result to be condemned by the rule that precludes the recovery of uncertain and speculative damages. That rule applies only to situations where the fact of damage is itself uncertain."

The Court then expressly pointed out that:

"But here we are assuming that the employee has proved that he has performed work and has not been paid in accordance with the statute. The damage is therefore certain. The uncertainty lies only in the amount of damages arising from the statutory violation by the employer. In such a case 'it would be a perversion of fundamental principles of justice to deny all relief to the injured person, and thereby relieve the wrongdoer from making any amend for his acts.' * * * It is enough under these circumstances if there is a basis for a reasonable inference as to the extent of the damages."

This Court, in Wirtz v. First State Abstract and Insurance Company, 362 F.2d 83 (8th Cir. 1966), said (page 88):

"An employer who has not kept the records required by Section 11(c) of the Act cannot be heard to complain that there is no evidence of the precise amount of time worked in interstate commerce, including overtime so work-ed. It is sufficient if the plaintiff produces evidence to show the amount and extent of that work as a matter of fact and reasonable inference."

For further discussion as to the rationale and application of the principles enunciated in Anderson v. Mt. Clemens Pottery Co., supra, see *Gilreath*, supra.

The record in this case establishes that the defendants failed to keep the records required by Section 11(c) of the Act. However, before the burden would shift to defendants to come forward with precise, specific evidence as to the hours worked and weeks of coverage, the plaintiff had the burden of "producing evidence to show the amount and extent of that work as a matter of fact and reasonable inference." It is implicit in the trial court's challenged finding that plaintiff failed to sustain the required burden of proof. That, of course, involves an issue of fact.

With reference to the time he worked at the auction barn, appellant testified that he usually worked on Saturdays and a portion of Sunday mornings, and in response to the question "During the week and on Saturdays, on the average, how many hours did you work a day?", he testified "I would say we averaged about twelve hours, six-hour days. I mean six twelve-hour days." He further testified that, when working primarily at the farm, he always worked some during each weekend at the auction barn, except on special occasions when there would be no sale. His testimony was the only testimony offered and received in his behalf, and his testimony as to the amount and extent of his work was contradicted by both Gillespie and Gilmore Whittington, the full-time employee of the Auction Company who had charge of the "back-end" of the barn—including receiving of cattle, tending to them, shipment of the cattle, keeping the "label book," and the hiring and firing of the employees in that department. In view of the fact that there was concededly but one sale each week at the barn (on Friday afternoon), and other specific testimony concerning the activities sur-

rounding such sale, it would seem that portions of appellant's testimony were clearly discredited. While no testimony appears in the record concerning the number of hours worked by appellant solely at the farm, and no testimony regarding the *estimated* number of such hours, there is testimony that after the cattle were placed on the tract for grazing "and settled down, and they had acclimated and straightened out, we had very little trouble with them. And it wasn't a full-time job during the time that it took to tend to it, but it was a *regular job.*" There is also testimony that during such times appellant was pretty much his own boss and that he had quite a bit of free time. Appellant concedes that sometimes he used the pickup truck furnished to him by Gillespie for his own personal use.

We believe the following quotation from this Court's opinion in *Gilreath*, supra (421 F.2d, p. 510), is appropriate:

> "The testimonial evidence of the extent to which the plaintiffs performed work for (employer) stands contradicted on the record. We are not at liberty to resolve independently and de novo this factual controversy. Credibility of witnesses is peculiarly within the province of the trial judge. * * * Having fully examined the record, we find substantial evidence to support the district court's implicit conclusion; hence, we are not left with a distinct and compelling impression that a mistake has been made."

In brief, we hold:

1. That appellant is not exempt from the minimum wage and overtime provisions of the Act by virtue of Section 13(a) (6) of the Act, or by virtue of Section 13(b) (13) thereof, but was, during the time involved, covered by the Act;

2. That appellant was a joint employee of the defendants in this action so as to require his entire compensation conform to the provisions of the Act, and his hours be aggregated for overtime pay purposes;

3. That the trial court's finding "That the plaintiff did not work for the defendants a sufficient number of hours in any week to entitle him to any additional compensation under the provisions of the Fair Labor Standard Act of 1938 as amended," constituted a finding, by implication, that the appellant had failed to sustain the required burden of producing sufficient evidence to show the amount and extent of his work as a matter of just and reasonable inference and that he had been improperly compensated.

And we further hold that the record contains substantial evidence to support the district court's implicit conclusion, and that the same is not clearly erroneous.

The judgment appealed from is affirmed.