Ramero **RODRIGUEZ** et al., Plaintiffs,

v.

**McKAY NURSERY COMPANY** et al.,
Defendants.

**Civ. A. No. 70-C-230.**

United States District Court,
E. D. Wisconsin.

Dec. 29, 1972.

Mark E. Wilson, James R. Scott and Thomas D. Crandall, Milwaukee Legal Services, Milwaukee, Wis., for plaintiffs.

Daniel W. Hildebrand, Madison, Wis., for defendant McKay Nursery Co.

James C. Mallatt and Thomas E. Obenberger, Milwaukee, Wis., for defendant Mammoth Spring Canning Corp.

James P. Altman, Asst. Atty. Gen., Madison, Wis., for defendants Frank Walsh and Steven Butler. .

REYNOLDS, Chief Judge.

This is an action brought by migrant laborers against their employers and two State of Wisconsin officials. The complaint[1] alleges that the defendants McKay Nursery Company (hereafter "McKay") and Mammoth Springs Canning Corp. (hereafter "Mammoth") violated certain federal regulations with regard to interstate recruitment of labor, and that the two State of Wisconsin officials, Frank Walsh and Steven Butler, willfully aided and conspired in these violations. It is further alleged that McKay in conspiracy with Walsh and Butler failed to pay plaintiffs overtime pay for work in excess of forty hours a week as is allegedly required under Title 29 U.S.C. § 207. With regard to this latter allegation, McKay has moved for summary judgment. With regard to all allegations, defendants Walsh and Butler have moved for summary judgment. These two motions, having been briefed and argued before me, are now ready for decision. I find that McKay's motion should be granted and that Walsh and Butler's motion should be granted in part and denied in part.

McKay has moved for partial summary judgment on the basis that federal law does not require special overtime pay under the circumstances of this case. The facts are undisputed. McKay is in the business of growing and selling trees and shrubs on a wholesale and retail basis. Plaintiffs are migrant workers hired by McKay to work in its fields planting and tending trees and shrubs. Plaintiffs are further employed in digging up the trees and shrubs, wrapping burlap around the lower trunks, loading the trees and shrubs onto trucks, driving the trucks to McKay's warehouse located adjacent to the growing fields, and assisting other employees (who are not parties to this action) in unloading the trees at the warehouse. Although 2 per cent of McKay's sales are made at this warehouse, plaintiffs' employment does not involve any retail sales activity. Plaintiffs worked over forty hours a week but were not paid "time and a half" for those hours over forty.

---

1. Various federal civil and labor rights statutes are alleged to be in issue—Title 42 U.S.C. §§ 1983 and 1985; Title 29 U.S.C. § 49k and 49 U.S.C. § 304(a) (3a)—and several grounds for jurisdiction are alleged—Title 28 U.S.C. §§ 1332, 1337, and 1343; Title 29 U.S.C. § 216(b).

Section 7(a)(1) of the Fair Labor Standards Act (Title 29 U.S.C. § 207(a)(1) ) provides in part as follows:

"Except as otherwise provided * * * no employer shall employ any of his employees * * * for a workweek longer than forty hours, unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed; * * *."

Section 13(b)(12) of the Act (Title 29 U.S.C. § 213(b)(12)) exempts from this requirement of time and a half pay "any employee employed in agriculture."

Finally, "agriculture" is defined in § 3(f) of the Act (Title 29 U.S.C. § 203(f)) as follows:

" 'Agriculture' includes farming in all its branches and among other things includes the * * * cultivation, growing, and harvesting of any * * * horticultural commodities * * * and any practices * * * performed by a farmer or on a farm as an incident to or in conjunction with such farming operations, including preparation for market, delivery to storage or to market * * *."

The question to be answered then is whether plaintiffs come within the "agriculture" exemption of § 13(b)(12) as defined by § 3(f). I find that they do.

It is clear by the very terms of § 3(f) that the raising and harvesting of trees and shrubs—"horticultural commodities" —comes within the scope of the statutory term "agriculture." Semble Title 29 C.F.R. §§ 780.121 and 780.174. Plaintiffs make no assertion to the contrary. Rather, plaintiffs take the position that although their work with regard to planting, tending, and digging up McKay's trees and shrubs comes within the scope of § 3(f), the wrapping and subsequent loading, transporting, and unloading at the warehouse do not. They argue that these latter functions are neither "harvesting" nor "incident" to farming but instead are incident to McKay's wholesale and retail operations.

Taken at face value, plaintiffs' position is not without merit. However, essentially the same argument was presented to and rejected by the Supreme Court in Maneja v. Waialua Agricultural Co., 349 U.S. 254, 261, 75 S.Ct. 719, 724, 99 L.Ed. 1040 (1955):

" * * * had Waialua not owned a mill, its transportation activities from field to mill would come squarely within the agriculture exemptions covering 'delivery to storage or to market or to carriers for transportation to market.' We do not believe the Congress intended to deprive farmers having their own mills of the exemption it afforded farmers who do not."

This position has been adopted by the Department of Labor with specific reference to nursery operations of McKay's type:

" * * * it is immaterial for what purpose he engages in farming or whether farming is his sole occupation. Thus, an employer's status as a 'farmer' is not altered by the fact that his only purpose is to obtain products useful to him in a non-farming enterprise which he conducts. *For example, an employer engaged in raising nursery stock is a 'farmer' for purposes of section 3(f) even though his purpose is to supply goods for a separate establishment where he engages in the retail distribution of nursery products. * * *"* (Emphasis added.) Title 29 C.F.R. § 780.139.

█ I find it is clear that all of plaintiffs' activities are within the scope of § 3(f). In N.L.R.B. v. Strain Poultry Farms, Inc., 405 F.2d 1025 (5th Cir. 1969), it was held that delivery of poultry from farms to processing plants was

agricultural activity within the meaning of § 3(f) when done by a poultry dealer-farmer.

"Preparation for market" as used in § 3(f) has been ruled to include wrapping:

> "*Nursery stock.* Handling, sorting, grading, trimming, bundling, storing, wrapping, and packaging. (See Jordan v. Stark Brothers Nurseries [D. C.], 45 F.Supp. 769; Mitchell v. Huntsville Nurseries [5 Cir.], 267 F. 2d 286.)" Title 29 C.F.R. § 780.166 (h).

"[D]elivery to storage" is interpreted to include:

> "* * * taking * * * horticultural commodities * * * to the places where they are to be stored or held pending preparation for or delivery to market." Title 29 C.F.R. § 780.168. Note also Title 29 C.F.R. § 780.127(b).

Even if McKay's warehouse is to be considered a "market" in that 2 per cent of its sales are conducted there, or in the sense that it may mark the dividing line between agricultural and nonagricultural activities, plaintiffs' functions would still be within the scope of § 3(f) as deliveries "to market" incident to farming:

> "The term 'delivery * * * to market' includes taking * * * horticultural commodities * * * to market. It ordinarily refers to the initial journey of the farmer's products from the farm to the market. The market referred to is the farmer's market which normally means the distributing agency * * * wholesaler or processor to which the farmer delivers his products. Delivery to market ends with the delivery of the commodities at the receiving platform of such a farmer's market (Mitchell v. Budd, 350 U.S. 473 [76 S.Ct. 527, 100 L.Ed. 565]). * * *" Title 29 C. F.R. § 780.169.

Plaintiffs cite Title 29 C.F.R. § 780.-178 [2] for support. However, this section deals with "[e]mployees of a grower of nursery stock who work in packing and storage sheds," the workers who handle the stock *after* plaintiffs perform their last task, i. e., unloading the truck.

■■ Regulations of the Wage and Hour Division of the Department of Labor are entitled to "great weight." Roland Electric Co. v. Walling, 326 U.S. 657, 676, 66 S.Ct. 413, 90 L.Ed. 383 (1946); Hearnsberger v. Gillespie, 435 F.2d 926, 930 (8th Cir. 1970). In light of Maneja v. Waialua Agricultural Co., supra, N.L.R.B. v. Strain Poultry Farms, Inc., supra, and the regulations set forth above, I find that plaintiffs are engaged in exempt employment with

---

2. "Employees of a grower of nursery stock who work in packing and storage sheds sorting the stock, grading and trimming it, racking it in bins, and packing it for shipment are employed in 'agriculture' provided they handle only products grown by their employer and their activities constitute an established part of their employer's agricultural activities and are subordinate to his farming operations. Such employees are not employed in agriculture when they handle the products of other growers. [Citations omitted.] The exemption would typically apply to employees engaged in the balling and storing of shrubs and trees grown in the nursery.

Where a grower of nursery stock operates, as a separate enterprise, a processing establishment or an establishment for the wholesale or retail distribution of such commodities, the employees in such separate enterprise are not exempt. [Citations omitted.] Although the handling and the sale of nursery commodities by the grower at or near the place where they were grown may be incidental to his farming operations, the character of these operations changes when they are performed in an establishment set up as a marketing point to aid in the distribution of those products."

regard to § 7 of the Fair Labor Standards Act.[3]

■■ Turning next to the motion of Walsh and Butler, I find that this motion should be granted with regard to the cause of action alleged against them involving § 7 of the Fair Labor Standards Act for the reasons set forth above, but that the motion should be denied as to the remaining causes of action. The complaint in part alleges that Walsh and Butler "knowingly and wilfully" aided in Mammoth and McKay's alleged violations of regulations governing interstate recruitment of labor and that "At all times relevant the defendants acted jointly in concert and in conspiracy with one another causing plaintiffs to be deprived of their federally guaranteed rights." Governmental immunity does not shield conduct of this nature, and the allegations of the complaint with regard to this conduct cannot be said to be insufficient as a matter of pleading. Gomez v. Florida State Employment Service, 417 F.2d 569 (5th Cir. 1969).

It is therefore ordered that defendant McKay's motion for summary judgment with regard to paragraphs XIV and XVII of the complaint and paragraphs 3 and 8 of the "Wherefore" clause of the complaint be and it hereby is granted.

It is further ordered that the motion for summary judgment of defendants Walsh and Butler be and it hereby is granted with respect to paragraphs XIV and XVII of the complaint, but in all other respects said motion is hereby denied.

3. Plaintiffs also argue that § 7(d) of the Fair Labor Standards Act (Title 29 U.S.C. § 207(d)), which grants a limited exemption to § 7 overtime pay requirements to processors of agricultural commodities, controls this case as opposed to § 13(b)(12). In support of this position they argue that to find § 13(b)(12) as controlling is to leave § 7(d) as a needless enactment. This argument is without merit. Cf. Maneja v. Waialua Agricultural Co., supra, 349 U.S. at 264–271, 75 S.Ct. 719. First, that McKay is engaged in both farming and processing does not detract from the fact that many concerns engage only in processing. These

concerns can only qualify for exemption under § 7(d) regardless of the fact that some aspects of McKay's business may qualify under § 13(b)(12). Second, while there are activities which in the case of farmer-processors might be termed incident to either, there are other functions which can only be termed processing and thus be exempted, if at all, under § 7(d). All that is found today is that certain limited functions performed by some of McKay's employees come within § 13(b)(12). Nothing in this decision suggests that all of McKay's employees come within § 13(b)(12.