James P. MITCHELL, Secretary of Labor, United States Department of Labor, Appellant,

v.

HUNTSVILLE WHOLESALE NURSERIES, INC., and John Fraser, III, Appellees.

No. 17488.

United States Court of Appeals Fifth Circuit.

June 3, 1959.

Bessie Margolin, Asst. Sol., Dept. of Labor, Washington, D. C., Beverley R. Worrell, Regional Attorney, Birmingham, Ala., Stuart Rothman, Solicitor, Sylvia S. Ellison, Albert M. Horn, Attorneys, United States Department of Labor, Washington, D. C., for appellant.

C. V. Stelzenmuller, M. L. Taliaferra, Birmingham, Ala., Charles E. Shaver, Huntsville, Ala., Lanier, Price, Shaver & Lanier, Huntsville, Ala., Burr, McKamy, Moore & Thomas, Birmingham, Ala., of counsel, for appellees.

Before HUTCHESON, Chief Judge, and TUTTLE and BROWN, Circuit Judges.

HUTCHESON, Chief Judge.

The only question presented by this appeal is whether the district judge correctly found and held that the agricultural exemption of the Wage and Hour Act provided by Sec. 13(a)(6) thereof, 29 U.S.C.A. § 213(a) (6), applies to the employees at the Canal Street warehouse of defendant-appellee, Huntsville Wholesale Nurseries, Inc., and as correctly denied the injunction sought by plaintiff-appellant.

The action was brought by the Secretary of Labor under Section 17 of the Fair Labor Standards Act of 1938, as amended,[1] to enjoin Huntsville Wholesale Nurseries, Inc. (herein referred to as Huntsville), and its vice-president and active manager, John Fraser, III, from violating the Act's minimum wage, overtime and record-keeping provisions with respect to employees employed at a pack-

1. Act of June 25, 1938, c. 676, 52 Stat. 1060, as amended by c. 736, 63 Stat. 910, 29 U.S. C.A. § 201 et seq.

ing and storage warehouse (hereinafter referred to as the Canal Street warehouse), located on Canal Street in downtown Huntsville, Alabama, and from shipping in interstate commerce goods produced by such employees.

In their answer and again at the pretrial hearing, appellees admitted that the employees in question were within the Act's general coverage. During the trial, they admitted non-compliance with the Act's requirements and stipulated that appellant would be entitled to injunctive relief unless, as appellees claimed, the exemption contained in Sec. 13(a)(6) of the Act is applicable to the Canal Street warehouse employees.

Section 13(a)(6), 29 U.S.C.A. § 213 (a) (6), exempts employees employed in "agriculture", which under Section 3(f) of the Act, includes:

"* * * farming in all its branches and among other things includes the cultivation and tillage of the soil, dairying, the production, cultivation, growing, and harvesting of any agricultural or horticultural commodities (including commodities defined as agricultural commodities in section 15(g) of the Agricultural Marketing Act, as amended), the raising of livestock, bees, fur-bearing animals, or poultry, and any practices (including any forestry or lumbering operations) performed by a farmer or on a farm as an incident to or in conjunction with such farming operations, including preparation for market, delivery to storage or to market or to carriers for transportation to market."

On the issues thus joined, there was a trial to the court without a jury and a record made up of, answers of both plaintiff and defendant to requests for admission, depositions, and oral testimony which, though comparatively voluminous, presented no substantial conflict with respect to any material fact. The trial concluded, the district judge, on findings of fact and conclusions of law, which sustained Huntsville's defense and rejected plaintiff's theory, entered judgment denying the injunction sought.

Appealing therefrom, plaintiff-appellant correctly, we think, summarizing the material facts [2] established and found

---

2. Huntsville is a large wholesaler of nursery products, currently having annual sales in excess of $300,000. Appellees' claim of exemption under Sec. 13 (a) (6) is based on the assertion that Huntsville "grows" all but a de minimis amount of the nursery stock which it sells, and that the Canal Street warehouse employees are engaged in practices "incident to or in conjunction with" Huntsville's farming operations.

Huntsville owns a 1072-acre farm, ten miles north of Huntsville, Alabama, where, in addition to raising livestock, corn and sometimes cotton, it grows approximately two-thirds of the nursery stock that it sells. This farm, known as Gladstone, has its own warehouse for handling nursery products. In addition, Huntsville leased a 39-acre farm from its president, John Fraser, Jr., but it has not sold any nursery stock from this farm (the Fraser place) for several years.

The Canal Street warehouse mentioned at the outset is used primarily for storing and processing nursery products obtained from sources other than Gladstone Farm and the Fraser place. As in-

dicated, these outside acquisitions constitute approximately one-third of Huntsville's total annual sales. They consist of items purchased by Huntsville from other nurseries to fill orders which the corporation, for various reasons, cannot fill from its own production, as well as items which Huntsville does not grow at Gladstone Farm or the Fraser place, namely, rosebushes, pecan trees, and, prior to the commencement of this suit, a small amount of berry bushes.

Rosebushes, which constitute between 17 and 20 percent of Huntsville's total annual sales and two-thirds of the products now handled at the Canal Street warehouse are supplied by contract growers located in or near Tyler, Texas. Pecan trees, which account for 3 to 7.6 percent of Huntsville's total sales are also supplied by a contract grower, Simpson Nursery Company of Monticello, Florida.

The "fill-in" items, which make up 5 to 10 percent of Huntsville's annual sales, are admittedly acquired by purchase. In the proceedings below, appellees acknowledged that the berry bushes had also been acquired by purchase, but denied that this was true of the rosebushes or

and the legal effect given them by the district judge, and, citing and discussing the cases on which it relies, is here insisting that the judgment denying the injunction was wrongly entered and that it must be reversed with directions to grant the relief sought.

The appellees, in their turn, relying strongly on the breadth and scope of the findings in their favor and the sweeping nature of the agricultural exemption, and exhaustively citing and discussing many cases dealing with and applying the exemption, are here insisting that on this record there is no basis for the holding that the findings and conclusions are clearly erroneous and must be set aside, and urging upon us that the judgment was right and must be affirmed.

of the pecan trees. As to both of these items, they claimed that Huntsville was engaged in "farming" within the meaning of the Act's agricultural exemption, basing their contention in this regard upon the contractual arrangement which Huntsville has with its rosebush and pecan tree growers.

Huntsville's agreements with the rose growers provide that the growers will lease to Huntsville, at $10 per acre, sufficient land to grow a specified number of rosebushes of different varieties, the crop to be the property of Huntsville at all times and under its supervision as to the best methods of planting, production, digging, grading, packing and shipping, (See typical agreement with Lakeview Rose Gardens, received in evidence as Defendant's Exhibit No. 1.) The agreements further provide that Huntsville will make advances to the growers of such sums of money as may be necessary up to $3,000, the advances to be deducted "in the final settlement" and that the growers are to be paid a specified amount per plant for "their labor in planting, tending, packing, shipping and properly caring for [the plants] in a workmanlike manner." In fact, however, as the trial court found, the growers' compensation under these agreements is "based on an agreed amount for each merchantable plant produced". Huntsville does not pay for culls. Nor does it pay the growers "for their labor" in planting, tending or caring for plants which subsequently die or are detroyed by hail or high winds. Huntsville's three principal suppliers of rosebushes under these contracts, are all independent farmers, who own or lease the land upon which the rosebushes are grown, who own their own tractors and other farm equipment, and who hire and pay their own employees. All have been growing rosebushes for years—Lakeview Rose Gardens for 40 years; O. H. Kidd Nursery for 25 years; Emmett Alston for 14 years—and one, Lakeview, grows more rosebushes for another wholesale nursery company than it grows for Huntsville.

As noted above, the pecan trees are also supplied by a contract grower. Huntsville's agreement with this grower is "substantially similar" to its agreement with the rose growers. The trial court noted that the pecan trees are billed to Huntsville on invoices which describe them as "sold to" appellee and that these invoices are filed in a voucher file marked "merchandise purchased" together with other invoices concededly relating to purchases. The invoices covering the rosebushes are also filed in the "merchandise purchased" voucher. Huntsville has only three classifications of the sources of its products; Gladstone Farm, Fraser Place, and Merchandise Purchased. The only discernible difference between the rosebush transactions and the pecan tree purchases was that on the latter Huntsville received a two percent prompt payment discount. However, the trial court concluded that pecan tree transactions are purchases but that Huntsville's activities in connection with the growing of the rosebushes in Texas constitute primary agriculture as defined in Section 3(f) of the Act. The evidentiary details supporting appellant's contention that this conclusion is erroneous will be discussed in the Argument, infra.

The trial court also concluded that "The practices performed at the Canal Street warehouse are done by [Huntsville] as an incident to or in conjunction with its primary farming operations at Gladstone Farm, the Fraser Place and in Texas", and that the employees are therefore "engaged in agriculture within the secondary meaning of" Section 3(f) of the Act. It held Huntsville's purchases of berry bushes to be de minimis, and the "fill-in" purchases to be "incidental to [its] farming and economically necessary thereto". Further, the court concluded that "The volume of pecan tree purchases and sales is not so substantial as to constitute them a separate or distinct business from the defendant corporation's farming enterprise, nor to change the clearly agricultural character of that enterprise."

A full and careful consideration of the record, the briefs and the arguments in the light of the principles as set down and applied in the controlling cases, convinces us that the appellant is right that the judgment must be reversed with directions to grant the injunction.

Since in this, as in other instances of statutory construction, Captain Cuttle's famous dictum, "The bearings of that obserwation lies in the application of it", applies with full force, and the bearing, that is the force and effect of what is said in each of the many cases cited and discussed by appellant and appellees, lies in each case in its application to the facts of that case, we shall not undertake a review and analysis of the many cases appellant and appellees cite. Confining ourselves to the authoritative cases, we shall draw therefrom and apply to the facts of this case the principles controlling here. In doing so, we shall not undertake to determine whether, as appellees claim, the exemption in the breadth of its withdrawal from the act, like Aaron's rod, swallows up the statute or, as appellant claims, the statute in the sweep of its comprehensive coverage swallows up the exemption. It will, we think, be sufficient for our purpose to cite the controlling cases. Farmers Reservoir & Irr. Co. v. McComb, 337 U.S. 755, 69 S.Ct. 1274, 93 L.Ed. 1672; Maneja v. Waialua, 349 U.S. 254, 75 S.Ct. 719, 99 L.Ed. 1040; Mitchell v. Budd, 350 U.S. 473, 76 S.Ct. 527, 100 L.Ed. 565; Mitchell v. Hertzke, 10 Cir., 234 F.2d 183; Mitchell v. Hunt, 5 Cir., 263 F.2d 913; Chapman v. Durkin, 5 Cir., 214 F.2d 360; and to say that under their holdings and teachings the judgment may not stand.

■ These cases settle it that the definition of agriculture in the Act combines two distinct meanings. The primary meaning includes the specifically enumerated elemental farming operations such as the cultivation and tillage of the soil, growing and harvesting. The second and broader meaning, on the basis of which the exemption was allowed in this case, includes other incidental practices but "only if they are performed by a farmer or on a farm", as an incident to, or in conjunction with, such farming operations. Farmers Reservoir Irrigation Co. v. McComb, supra, 337 U.S. 763–766, 69 S.Ct. 1274, 1280. This means that the practices in question must relate to the farmer's own farming operations and not to the farming operations of others and must in addition be subordinate to such operations. Maneja v. Waialua and Mitchell v. Budd, supra.

■ Although Huntsville is a farmer to the extent that it operates Gladstone Farm and has nursery stock growing on the Fraser Place, this is not sufficient to exempt the employees at the Canal Street warehouse, employed in unloading, sorting, grading, trimming, storing, racking, and picking nursery stock received from other sources. This is so for the reason pointed out in the Farmers Irrigation case, that the Act's definition of agriculture requires that the practices be performed by a farmer or on a farm, and there is the additional requirement that the practices be incidental to such farming.

■ Thus processing on a farm of commodities produced by other farmers is incidental to, or in conjunction with, the farming operation of the other farmers and not incidental to, or in conjunction with, farming operations of the farmers on whose premises the processing is done. Such processing is therefore not within the definition of agriculture. 337 U.S. at page 766, 69 S.Ct. 1274.

■ It was and is, therefore, of the greatest importance to appellees' case that it be found and held that the rosebushes grown in Texas are grown by Huntsville, and it is here, we think, that the district judge's finding and decision, that they are, runs a good principle into the ground. It is not a question here, therefore, of giving a broad or a narrow interpretation to the agricultural exemption. It is a question of considering the undisputed facts as they are proven and established and determining

whether what is claimed by Huntsville to be its own farming is in reality the farming of others. We think that, judged by every aspect and understanding of farming, it must be held that the Texas growers are the farmers as to the rosebushes grown there, and that Huntsville is not. The growers are not employees or agents of Huntsville. Mitchell v. Hertzke, 10 Cir., 234 F.2d 183. It is true enough that Fraser does contribute counsel and advice, does in some instances make advances, does furnish a farm market, and does in other ways, as the purchaser of the bushes, assist the growers. But these things are not farming in the sense of the statutory exemption. To permit this sort of arrangement to be called farming so as to include within it a warehousing business of the kind operated here, would be not to give a broad construction to the statutory exemption but to do away with it altogether and to substitute for it a rule that anything that aids farming such as furnishing a steady market, certain outlets, general aid and assistance to the farmer, is within the exemption. To hold this, however, would run directly in the teeth of the cases above cited. It is true that there is evidence that some farmers do warehouse their nursery stock and that the processing of nursery stock for storing in a warehouse, such as occurred here, does not change the nature of the agricultural product. This fact, while of some significance, is not sufficient, however, under the facts of this case to bring a city warehouse, constructed, located and maintained some 500 miles from the Texas operations, within the ambit of the agricultural exemption.

In view of our holding as to the Texas rosebushes, it is unnecessary for us to consider in detail the pecan trees, the berry bushes and the fill-ins. It is sufficient to say that upon the case as a whole the exemption should be denied. After all, what is in question here is neither earth shaking nor breathtaking. There is no purpose evidenced, no result occurring which prevents Huntsville from operating its real agricultural enter-prises under the exemption. All that has occurred here is that under the facts of this particular case, it is held that Huntsville, as to the particular employees involved, is not entitled to bring within the shield of the agricultural protection a warehouse in a city where no primary agriculture is being performed merely on the theory that what is done there is incidental to farming activities of Huntsville elsewhere claimed to exist but not in fact existing.

The claim to the exemption is without adequate support in the evidence. The judgment is reversed and the cause is remanded with directions to grant the injunction.