**F. Ray MARSHALL, Secretary of Labor, United States Department of Labor, Plaintiff-Appellee,**

v.

**GULF & WESTERN INDUSTRIES, INC., Defendant-Appellant.**

No. 76–3542
Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

May 12, 1977.

Rehearing and Rehearing En Banc Denied June 30, 1977.

* Rule 18, 5 Cir.; *see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.,* 5 Cir., 1970, 431 F.2d 409, Part I.

Théodore W. Herzog, Vero Beach, Fla., for defendant-appellant.

Carin Ann Clauss, Atty., Alfred G. Albert, Act. Solr. of Labor, Bobbye D. Spears, Reg. Solr., Jacob I. Karro, Rita L. Stotts, Attys., U. S. Dept. of Labor, Washington, D. C., for Secretary of Labor.

Before GOLDBERG, CLARK and FAY, Circuit Judges.

CLARK, Circuit Judge:

Gulf & Western Industries, Inc., a Delaware corporation licensed to operate in Florida, appeals the district court's decision that it is liable for minimum and overtime wage deficiencies under the Fair Labor Standards Act. 29 U.S.C. § 201 et seq. The facts were not disputed and the case was decided on cross-motions for summary judgment. The trial court determined that Gulf & Western is not entitled to the "agriculture" exemption from minimum and overtime compensation requirements.[1] We affirm.

Gulf & Western operates two packing facilities in Broward County, Florida. In one its employees only process tomatoes, in the other, a broader range of vegetables. Gulf & Western does package some tomatoes in the former plant that are grown on its own farms, but it also handles tomatoes grown by other farming operations. The vegetable packing operation presents a more complex fact matrix. Commencing in 1959, Gulf & Western's wholly-owned subsidiary, Abaco Farms, Ltd., was engaged in farming in the Bahamas. According to Gulf & Western, a difficult political climate in the Bahamas following its receipt of limited autonomy from Great Britain in 1964, forced Abaco to abandon its farming operations. After a three year hiatus, Abaco entered into a contractual relation with a Bahamian corporation, Key & Sawyer Farms, Ltd. The contract provided that Abaco owned all crops planted, grown, and harvested on designated Bahamian property owned or leased by Key & Sawyer. Abaco agreed to market all produce with a "United States buyer," i. e., Gulf & Western, Abaco's parent corporation. Abaco as "owner" of the crop had control over the farming operations. However, the risk of price fluctuation on the United States market remained with Key & Sawyer.

The issue presented to this court is whether Gulf & Western's employees in its Broward County, Florida facilities are excluded from overtime and minimum wage mandates due to participation in "agriculture." 29 U.S.C. § 203(f) defines the breadth of this term's coverage:

"Agriculture" includes farming in all its branches and among other things includes the cultivation and tillage of the soil, dairying, the production, cultivation, growing, and harvesting of any agricultural or horticultural commodities (including commodities defined as agricultural commodities in section 1141j(g) of Title 12), the raising of livestock, bees, fur-bearing animals, or poultry, and any

---

1. 29 U.S.C. § 213(b)(12) states:
(b) The provisions of section 207 of this title shall not apply with respect to—
* * * * * *
(12) Any employee employed in agriculture or in connection with the operation or main-

tenance of ditches, canals, reservoirs, or waterways, not owned or operated for profit, or operated on a sharecrop basis, and which are used exclusively for supply and storing of water for agricultural purposes . . . .

practices (including any forestry or lumbering operations) performed by a farmer or on a farm as an incident to or in conjunction with such farming operations, including preparation for market, delivery to storage or to market or to carriers for transportation to market.

The Supreme Court has compartmentalized this statutory definition into "primary agriculture" and "secondary." Activities that comprise primary agriculture are those that traditionally are considered agricultural: tillage, cultivation, growing, and harvesting. No argument is made that Gulf & Western is entitled to this type of exclusion from coverage. Secondary agriculture describes those practices "performed whether by a farmer or on a farm as an incident to or in conjunction with such [primary] farming operations." *Farmers Res. & Irrig. Co. v. McComb*, 337 U.S. 755, 762–63, 69 S.Ct. 1274, 1278, 93 L.Ed. 1672 (1949).

We first turn to the claim that the Broward County facility in which only tomatoes are processed is entitled to the secondary agriculture exemption. If employees are engaged both in exempt and non-exempt work, the Fair Labor Standards Act applies to the entirety. *Skipper v. Superior Dairies, Inc.*, 512 F.2d 409, 411 (5th Cir. 1975); *Hodgson v. Wittenberg*, 464 F.2d 1219, 1221 (5th Cir. 1972). The fact that tomatoes grown by independent farmers were processed by Gulf & Western prevents it from receiving the claimed exemption. *Hodgson v. Wittenberg, supra* at 1222.

In considering the other packing operations, we are governed by the Supreme Court's reasoning in *Farmers Res. & Irrig. Co. v. McComb*, 337 U.S. 755, 761, 69 S.Ct. 1274, 1278, 93 L.Ed. 1672 (1949).

[T]he question as to whether a particular type of activity is agricultural is not determined by the necessity of the activity to agriculture nor by the physical similarity of the activity to that done by farmers in other situations. The question is whether the activity in the particular case is carried on as part of the agricultural function or is separately organized as an independent productive activity.

The issue in Gulf & Western's mixed vegetables operation has been addressed persuasively in an application of *Farmers Res. & Irrig. Co. v. McComb* made by the Ninth Circuit. In *Hodgson v. Idaho Trout Processors Co.*, 497 F.2d 58 (9th Cir. 1974), the court was faced with a claim that the agriculture exemption applied to a corporation, Trout Processors, which cleaned, processed, froze, packed, and marketed fish for three trout farms. These farms were the sole stockholders of the corporation. One of the trout farms managed the affairs of Trout Processors and was paid a fee. After deducting the processing and marketing costs of Trout Processors, the proceeds of trout sales was distributed to the three trout farms. The argument of Trout Processors was that its function in the total trout operation was so closely tied to the trout farms as to entitle it to the exemption. The court disagreed, and referred to this reasoning by the Supreme Court in *Farmers Res. & Irrig. Co. v. McComb, supra*, 337 U.S. at 768, 69 S.Ct. at 1281:

There is a difference between the hiring of mutual servants by a group of employers and the creation by them of separate business organization, with its own officers, property, and bonded indebtedness, which in turn hires working men. Those working men are in no real sense employees of the shareholders of the organization. They are hired by the organization, fired by the organization, controlled and directed by the organization, and paid by it.

The court concluded that Trout Processors was set up as an independent entity to process the fish "farmed" by the shareholders of the corporation. Trout Processors employees were employed by the corporation and not the controlling trout farms; the farms did not interfere in any manner with the processing operations. Abaco's independence in decision-making from Gulf & Western is similarly uncontroverted. Its employees were clearly its own. We need not decide whether Key & Sawyer or Abaco was the actual "farmer" in the Bahamian operation; it is sufficient to say that Gulf & Western was not.

The judgment of the district court is AFFIRMED.