The **FEDERAL LAND BANK OF COLUMBIA, Appellant,**

v.

**Paul Douglas McNEAL, Appellee.**

Civ. A. No. 287–156.

United States District Court,
S.D. Georgia,
Brunswick Division.

Aug. 26, 1987.

Stephen L. Jackson, Waycross, Ga., for appellant.

Evelyn Johnson, Brunswick, Ga., for appellee.

## ORDER

ALAIMO, Chief Judge.

This bankruptcy appeal presents the question of whether a debtor who operates a service cleaning chicken houses and selling the manure for fertilizer is engaged in a "farming operation" as that term is defined in 11 U.S.C. § 101(20).

In an order entered on May 18, 1987, the bankruptcy court denied appellant Federal Land Bank's motion to dismiss after finding that the debtor, Paul Douglas McNeal, received more than half of his income from farming operations and was, therefore, a "family farmer" as defined in 11 U.S.C. § 101(18). Only family farmers so qualified may proceed voluntarily under Chapter 12 of the Bankruptcy Code, the "Family

Farmer Bankruptcy Act," 11 U.S.C. § 1201 *et seq.*, and thereby enjoy its shield from involuntary petitions. In appealing the bankruptcy court's order, the Federal Land Bank contends that the cleaning of chicken houses and selling of manure is not a farming operation and that, consequently, any income derived therefrom should not be counted in determining whether the debtor was a family farmer. After reviewing the relevant caselaw, the Court agrees with appellant. Accordingly, the bankruptcy court's order of May 18, 1987, will be reversed.

## FACTUAL BACKGROUND

On March 3, 1987, Paul Douglas McNeal filed a voluntary petition for bankruptcy under Chapter 12 of Title 11 of the United States Code. The Federal Land Bank moved for relief from the automatic stay of Chapter 12, for alternative protection, that the petition be dismissed and for sanctions. The bankruptcy court held a hearing on the motion on May 6, 1987, during the course of which the following facts were established.

As a deputy sheriff for Jeff Davis County, Georgia, McNeal had earned $17,394.12 in non-farm income for 1986. In addition, McNeal earned $8,860 from cleaning out chicken houses owned by other farmers and selling chicken manure as fertilizer. McNeal maintained that this income, along with another $1,670 from machine work performed in the chicken house operation, was part of his total farm income of $23,563 for 1986. Recognizing the paucity of authority on the question of whether a chicken coop cleaning service was a "farming operation," the bankruptcy court declared that it was and determined that more than 50 percent of McNeal's 1986 income, or $23,563, was derived from farming operations. Accordingly, in its written order of May 18, 1987, the bankruptcy court denied the Federal Land Bank's motion to dismiss. At the hearing, the Bank failed to pursue its additional requests for relief, and the bankruptcy court treated them as waived.

## DISCUSSION

Under the Bankruptcy Code, a "farming operation" includes "farming, tillage of the soil, dairy farming, ranching, production or raising of crops, poultry or livestock, and production of poultry or livestock products in an unmanufactured state." 11 U.S.C. § 101(20). The courts have recognized that the definition of farming operations "does not provide an all-inclusive list of tasks and activities" and is, therefore, not limited to those operations specifically enumerated. *See, e.g., In the Matter of Bernard Armstrong*, 812 F.2d 1024, 1026 (7th Cir.1987); *Collier on Bankruptcy*, Sec. 101.20, P. 101–48 (1987). However, the courts have also sounded a warning against interpreting the statute so broadly as to eliminate the definition altogether by "bringing in operations clearly outside the nature or practices one normally associates with farming." *In re Dakota Lay'd Eggs*, 57 B.R. 648, 653 and 655 (Banrk.D.N.D.1986). In any case, the scope of the term "farming operation" is central to a determination of whether the debtor, McNeal, is a "family farmer" entitled to avail himself of the voluntary bankruptcy procedures of Chapter 12, 11 U.S.C. § 1201 *et seq.*

A "family farmer" is defined under the Bankruptcy Code as an:

individual and spouse engaged in a farming operation whose aggregate debts do not exceed $1,500,000 and not less than 80 percent of whose aggregate noncontingent, liquidated debts (excluding a debt for the principal residence of such individual or such individual and spouse unless such debt arises out of a farming operation) on the date the case is filed, arise out of a farming operation owned or operated by such individual or such individual and spouse, and *such individual or spouse receive from such farming operation more than 50 percent of such individual's or such individual and spouse's gross income* for the taxable year preceding the taxable year in which the case concerning such individual or such individual and spouse was filed.

11 U.S.C. § 101(17) (emphasis added). The issue presented on appeal, then, is whether more than 50 percent of the debtor's income was derived from a farming operation. Unquestionably, if the debtor's chicken house cleaning is considered a farming operation, more than 50 percent of the debtor's income during 1986 will have come from farming operations.

The Court's review of the caselaw reveals at least four distinct tests that have been applied to determine whether a particular activity should be treated as a farming operation. First, in a case under the Fair Labor Standards Act, the former Fifth Circuit held in *Mitchell v. Huntsville Wholesale Nurseries*, 267 F.2d 286 (5th Cir.1959), that in order for an activity to be characterized as a "farming operation," the "practices in question must relate to the farmer's own farming operations and not to the farming operations of others. . . ." *Id.* at 290. The *Mitchell* test has been rephrased in question form by the bankruptcy court in *In re Dakota Lay'd Eggs*, *supra* at 656. In that case, the court determined whether certain activities of an agribusiness were farming operations by asking: "Is it a typical farming activity and, if so, whose farming activity is it—[the debtor's] or someone else's?" *Id.*

Although the cleaning of chicken houses may fairly be considered a typical farming operation, it is undisputed that here the practice did not relate to the debtor's *own* farming operation but, rather, to the farming operations of others. McNeal ran a chicken coop cleaning service for other farmers; he also sold and spread the manure collected in the cleaning process to other farmers as a side business. Since his customers were other farmers and since he spread fertilizer on their land or sold it to them for use on their land, it is clear that this activity related primarily to the farming operations of others. Under the *Mitchell* test then, the cleaning of *other* farmers' chicken houses would not be considered a farming operation of this debtor.

The second test focuses more on legislative intent rather than functional analysis. The Seventh Circuit explained in *In the*

*Matter of Bernard Armstrong, supra* at 1027, that Congress exempted family farmers from the commencement of involuntary bankruptcy cases under Title 11 " '... because of the cyclical nature of their business. One drought year or one year of low prices, as a result of which a farmer is temporarily unable to pay his creditors, should not subject him to involuntary bankruptcy.' " *Id., quoting* Senate Report No. 95–989, U.S.Code Cong. & Admin.News 1978, p. 5787.

With this Congressional purpose in mind, the Seventh Circuit reasoned that a farming operation is one which is exposed to the inherent risks and cyclical uncertainties associated with farming. However, if the activity was one in which the debtor "received cash up front" or where the debtor was "insulated from the traditional risks of farming," it should not be treated as a "farming operation." *Id.* at 1028; *see also In the Matter of William W. Wagner,* 808 F.2d 542, 547 (7th Cir.1986) ("The traditional rationalization of the farmer's exemption is that the cyclical pattern of farm prices abnormally depresses farmers' net income in some years, making it impossible for them to pay their creditors."); *In re Hines,* 7 B.R. 415, 418 (Bankr.D.S.D.1980).

As applied to the instant case, the "inherent risks of farming" test also works against the debtor. McNeal testified that he was paid for fertilizer sales regardless of whether his farmer-customer's crop came in. Although McNeal's business faced some risks from the possible failure of *other* chicken farmers, his fertilizer sales were a "cash-up-front" operation. Only a highly unlikely catastrophe, such as a pestilence capable of wiping out chicken farming in the surrounding community, could significantly affect McNeal's business of cleaning chicken houses. Thus, under normal circumstances, McNeal's income from chicken house cleaning would be insulated from the cyclical risks associated with farming. This is especially true because, as McNeal testified at the hearing, his normal practice was to clean chicken houses "for free," taking remuneration in the form of the collected fertilizer which he then sold for profit. By not requiring cash payment for the service, the chicken house cleaning business could flourish in hard times as well as in bumper crop years. Consequently, it does not appear that the debtor's chicken fertilizer service should be treated as a "farming operation" in light of the Congressional intent to protect only those enterprises exposed to the traditional risks of farming.

Under a third test discussed in *Armstrong,* the debtor's position fares only slightly better. The court there allowed proceeds from the sale of farming equipment to be counted as income derived from a farming operation where the sale was necessary to scale down the operation and save the farm and where the debtor did not have a history of buying and selling equipment on an experimental basis for investment purposes. *Armstrong, supra* at 1026–27. *See generally In re LaFond,* 791 F.2d 623, 626 (8th Cir.1986). In the case at bar, the debtor testified that his father assisted him in the chicken house operation without pay because he was "trying to help me save this farm." Transcript of Hearing at 10. While genuinely admiring debtor's efforts to salvage his farm, the Court is constrained by the applicable law to consider only income from debtor's *farming* operation in determining whether he is a "family farmer," as defined by statute. Because the debtor's chicken house operation is clearly a detached business with an existence entirely distinct from debtor's farm, the fact that debtor started the business to preserve his farm does not transform that business into a "farming operation." Taken to its logical extreme, such a theory would allow the debtor to count his income as a deputy sheriff as farm income if he could show that he had taken the job in order to save his farm. Since the chicken house cleaning service could stand alone as a commercial enterprise unrelated to any farm, its income should not be considered together with the income generated by debtor's farming operations.

The final test discovered in a review of the cases appears at first blush to favor debtor. In *In re Edwin J. Guinnane,* 73 B.R. 129, 132 (Bankr.D.Mn.1987), the bank-

ruptcy court found that income from the debtor's trucking of his neighbor's cattle to market was farm-related income. The court concluded that "the hauling of cattle for third parties is tied directly to the efficiency of the Debtors' farming operation because it aids and constitutes a part of Debtors' ranching operation." *Id.* Essentially, the court found that, where the debtors hauled their own cattle to market *along with* cattle belonging to their neighbor farmers, such trucking activity could not be considered "an independent commercial enterprise separate from their farming operation;" and the income accruing from hauling a third party's cattle could be counted as generated from the debtors' farming operations. This test focuses on whether the challenged activity is "tied directly to the efficiency of the Debtors' farming operation." Here, the challenged activity is immaterial to the efficiency of the debtor's own farming operations. Except to the extent that it raises revenue, debtor's chicken house cleaning and fertilizer sales do not improve the efficiency of his farming operation. Nor are these activities undertaken in the normal course of debtor's farming operations, as was the cattle hauling in *Guinnane.* Even under the broad criteria adopted in *Guinnane,* the chicken house cleaning and fertilizer sales do not qualify as farming operations as defined in 11 U.S.C. § 101(20).

CONCLUSION

Having determined under the preceding analysis that McNeal's income from cleaning chicken coops and selling fertilizer was not income derived from farming operations, the Court finds that the bankruptcy court erred in denying appellant's motion to dismiss. Accordingly, the bankruptcy court's order of May 18, 1987, is hereby REVERSED and the case is REMANDED for further proceedings not inconsistent with the foregoing.