[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
July 3, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-11370

_____

D.C. Docket No. 02-23662-CV-AMS

ARMANDO SARIOL,

Plaintiff-Appellant,

versus

FLORIDA CRYSTALS CORPORATION,
FLORIDA CRYSTALS FOOD CORP.,
SUGAR FARMS CO-OP,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(July 3, 2007)**

Before  TJOFLAT, FAY and SILER,[*] Circuit Judges.

_____

[*] The Honorable Eugene E. Siler, Jr., United States Circuit Judge for the Sixth Circuit, sitting by designation.

SILER, Circuit Judge:

Armando Sariol appeals from a grant of summary judgment in favor of Florida Crystals Corporation, Florida Crystals Food Corporation, and Sugar Farms Co-op (collectively "Defendants") on his Fair Labor Standards Act ("FLSA") claim for overtime compensation, 29 U.S.C. § 207. The magistrate judge, sitting by the parties' consent, entered summary judgment based on the FLSA's agriculture exemption, 29 U.S.C. § 213(a)(6), finding that Sariol, who operated a service truck delivering fuel on Sugar Farms Co-op's sugar cane and rice fields, was involved in a form of secondary agriculture. We AFFIRM.

## BACKGROUND

Sugar Farms Co-op is organized as an agricultural cooperative association under Florida law. It engages in farming operations, including the planting and cultivation of sugar cane and rice, but does not undertake any marketing, processing, or milling of its agricultural products. The land making up the farm is owned by a number of different entities that pay the cooperative to carry on the farming operations. Sugar-Farms Co-op employs between 220 and 300 people, and uses independent contractors to supplement the work of its employees. Overall, the contractors perform only a small fraction of the agricultural work as compared to the regular employees.

Sariol worked directly for Sugar Farms Co-op, delivering fuel for farm machinery and performing maintenance and repair services on farm equipment. Florida Crystals Corporation and Florida Crystals Food Corporation were alleged to be joint employers of Sariol. As part of his work for Sugar Farms Co-op, Sariol delivered fuel to machinery owned and operated by independent contractors who provided services such as planting, fertilizing, herbiciding, and harvesting during peak times in the growing season. Sugar Farms Co-op purchased all the fuel used on the farm and furnished contractors with fuel as part of their compensation. Sariol worked on the farm itself and did not provide any off-site services. All of his duties, whether provided to fellow employees or independent contractors, were part of the operations at Sugar Farms Co-op.

In 2002, Sariol filed this action against the Defendants, alleging violations of the FLSA for missed overtime pay. The Defendants each filed separate motions for summary judgment claiming that the FLSA's agriculture exemption precluded Sariol from receiving overtime pay. The magistrate judge agreed and granted summary judgment in favor of the Defendants on this ground.

## DISCUSSION

We review a grant of summary judgment *de novo*, applying the same legal standards as the court below, and viewing all facts and reasonable inferences drawn

therefrom in the light most favorable to the non-moving party. *Johnson v. Booker T. Washington Broad. Serv., Inc.*, 234 F.3d 501, 507 (11th Cir. 2000).

Under the FLSA's overtime wage provision, covered employees must be paid at least one and one-half times the regular rate at which they are employed for hours worked in excess of forty hours. 29 U.S.C. § 207(a)(2). This provision does not cover all employees, however, as the FLSA expressly exempts those workers "employed in agriculture." 29 U.S.C. § 213(a)(6). The FLSA, in turn, defines "agriculture" to include

> farming in all its branches and among other things includes the cultivation and tillage of the soil, dairying, the production, cultivation, growing, and harvesting of any agricultural or horticultural commodities . . . and any practices (including forestry or lumbering operations) performed by a farmer or on a farm as incident to or in conjunction with such farming operations, including preparation for market, delivery to storage or to market or to carriers for transportation to market.

29 U.S.C. § 203(f).

The United States Supreme Court has construed this statutory definition as providing for two categories of exempt agricultural practices. *See Farmers Reservoir & Irrigation Co. v. McComb*, 337 U.S. 755, 762-63 (1949). The first half of the definition covers what the Court referred to as "primary" agriculture, which includes specific activities like cultivation and tillage of the soil, dairying, and harvesting. *Id.* at 762. The latter half of the definition, according to the Court, has a "broader"

4

meaning that "includes any practices, whether or not themselves farming practices, which are performed either by a farmer on a farm, incidentally to or in conjunction with 'such' farming operations." *Id*. at 762-63. Later courts have characterized this distinction as one between "primary agriculture" and "secondary agriculture." *See Marshall v. Gulf & W. Indus., Inc.*, 552 F.2d 124, 126 (11th Cir. 1977).

We agree with the district court that Sariol's job duties were a form of secondary agriculture. Numerous courts have found similar activities to come within the agriculture exemption. For instance, the Supreme Court has held that employees who transported workers and supplies to an employer's sugar cane fields were engaged in agriculture, and thus covered by the exemption, as were those who repaired and serviced equipment necessary to the farming operations. *Maneja v. Waialua Agr. Co.*, 349 U.S. 254, 260-64 (1955). Flying a crop-dusting airplane, cooking for field workers, or even clerical work can be considered agriculture for purposes of the exemption if done by a farmer or on a farm and incidentally or in conjunction with such farming operations. *See Brennan v. Sugar Cane Growers Coop. of Fla.*, 486 F.2d 1006, 1010-11 (5th Cir. 1973); *Hodson v. Ewing*, 451 F.2d 526, 529 (5th Cir. 1971); *Boyls v. Wertz*, 352 F.2d 63, 63 (5th Cir. 1965).[1]

---

[1]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Delivering fuel to farm machinery and maintaining equipment are, as the district court concluded, not only incidental to Sugar Farms Co-op's operations, but are absolutely necessary. Without these services, which were provided both to the Sugar Farms Co-op employees and its independent contractors, the farm would grind to a halt. As a result, Sariol's activities clearly qualify as a form of secondary agriculture.[2]

Nevertheless, there are limits to the breadth of the secondary agriculture exemption. It is clear from the statutory definition itself that such work must be performed either by a farmer or on a farm, and that it must be related to the operations of the very farm on which the employee works. In *Mitchell v. Huntsville Wholesale Nurseries, Inc.*, 267 F.2d 286, 290 (5th Cir. 1959), for example, the employer qualified as a farmer because it owned and operated a nursery that grew, cultivated, and sold its own products. However, the nursery could not claim the exemption for employees who spent their time processing nursery stock received from other farms. *Id.* To be eligible for the exemption, "the practices in question must relate to

_____

[2]Some of the harvesting work was performed by independent contractors from local sugar cane millers who then transported the cane to the mill. In *Wirtz v. Osceola Farms Co.*, 372 F.2d 584, 589 (5th Cir. 1967), we held that the hauling of raw cane to a mill was incidental to *milling*, not farming, taking it outside the agriculture exemption. Here, however, Sariol's delivery of fuel to the contract harvesters is incidental to the primary agricultural activity of "harvesting," *see* 29 U.S.C. § 203(f), qualifying his work as an exempt secondary activity. *Wirtz* itself recognized this distinction in holding that other drivers who transported laborers and supplies for purposes of the harvesting were exempt. *Wirtz*, 372 F.2d at 589.

the farmer's own farming operations and not to the farming operations of others." *Id*. Otherwise, the court reasoned, the practices would be "incidental to, or in conjunction with, the farming operation of the other farmers and not incidental to, or in conjunction with, farming operation of the farmers on whose premises the processing is done." *Id*. Seizing upon this language, Sariol argues first that the portion of his time spent delivering fuel to independent contractors is related to the "farming operations of others" and therefore not exempt.[3] Second, and alternatively, he argues that cooperative associations like Sugar Farms Co-op are barred from claiming the agricultural exemption. Neither contention has merit.

For Sariol's first argument to succeed, we would have to agree that independent contractors constitute their own separate "farming operations." Taking a snippet of the Court's language in *Farmers Reservoir*, he argues that the independent contractors are "separately organized as an independent productive activity." *Farmers Reservoir & Irrigation Co. v. McComb*, 337 U.S. 755, 761 (1949). He cites the fact that the independent contractors are responsible for their own workforce and equipment (except for fuel, of course). This language from *Farmers Reservoir*,

_____

[3]Although Sariol spent the majority of his time delivering fuel to and servicing Sugar Farms Co-op's equipment, both parties agree that any time spent during the workweek on nonexempt activities would vitiate the exemption for the entire week. *See Skipper v. Superior Dairies, Inc.*, 512 F.2d 409, 411 (5th Cir. 1979).

7

however, deals only with the problem of distinguishing agricultural from nonagricultural activities. There is no such problem here. As we noted above, Sariol's job duties clearly qualify as secondary agriculture. *Farmers Reservoir* simply does not speak to the issue of whether the work of independent contractors can be considered separate farming operations.

Two sources of authority support the commonsense view that independent contractors do not make up their own separate operations. First, the Department of Labor's regulation explaining the agriculture exemption reveals that Congress intended independent contractors to be treated like other agricultural employees:

> The legislative history makes it plain that this language was particularly included to make certain that *independent contractors* such as threshers of wheat, who travel around from farm to farm to assist farmers in what is recognized as a purely agricultural task and also to assist a farmer in getting his agricultural goods to market in their raw or natural state, should be included within the definition of agricultural employees.

29 C.F.R. § 780.128 (emphasis added) (quoting *Bowie v. Gonzalez*, 117 F.2d 11, 18 (1st Cir. 1941)). Because the agricultural activities of independent contractors, like those of employees, are exempt, it would be senseless to draw a distinction between secondary agricultural services provided to one but not the other, as Sariol asks us to do. That contractors are to be treated like employees also demonstrates that, under

8

Congress's understanding, contractors hired by farms do not carry on their own separate farming operations.

Second, in deciding whether a subsidiary or its parent company would be considered a "farmer" for purposes of the exemption, we placed great weight on the subsidiary's "independence in decision-making." *Marshall v. Gulf & W. Indus., Inc.*, 552 F.2d 124, 126 (11th Cir. 1977). In *Marshall*, we held that the subsidiary, because it "owned all crops planted, grown, and harvested," therefore had "control over the farming operations." *Id*. This independence and control meant that only the subsidiary, not the parent company, could claim the exemption. *Id*. By contrast, independent contractors do not control the farming operations. They perform discrete functions at the behest and control of the farm operator, here Sugar Farms Co-op. Therefore, the work of the contractors cannot be viewed as separate operations, and the time Sariol spent delivering fuel to the contractors was covered by the exemption.[4]

Sariol's second argument is that Sugar Farms Co-op cannot qualify as a "farmer" under the exemption definition because it is a cooperative association. Sariol relies solely on the *Farmers Reservoir* decision, in which the Court held that

---

[4]Central to our holding is that Sariol spent all of his time on the Sugar Farms Co-op operation, satisfying the separate requirement under the exemption that secondary agricultural activities be performed "by a farmer or on a farm." 29 U.S.C. § 203(f). Sariol's arguments from cases where the exemption was denied for employees who worked off the farm are therefore inapposite.

9

the employees of an irrigation cooperative were not engaged in the practice of agriculture, even though the cooperative had been created and was owned by farmers. *Farmers Reservoir*, 337 U.S. at 768-69. The Court reasoned:

> The controlling fact is that the company has been set up by the farmers as an independent entity to operate an integrated, unitary water supply system. The function of supplying water has thus been divorced by the farmers from the farming operation and set up as a separate and self-contained activity in which the farmers are forbidden, by the company's by-laws, to interfere. Those employed in that activity are employed by the company, not by the farmers who own the company.

*Id*. at 768. Looking to the legislative history of the exemption, the Court also stated that "[t]he debate in both Houses shows a clear awareness that the employees of farmers cooperative associations would not be exempted as employees of farmers." *Id*. at 769 n.19.

Sariol interprets this case as precluding all cooperative associations from claiming the exemption. However, it is clear that *Farmers Reservoir* stands for the more limited proposition that employees of agricultural cooperatives are employed by the cooperative and not by the farmers who create and own the cooperative. To determine whether the exemption applies, courts must look to the activities of the cooperative; the mere fact that it is owned by farmers will not suffice. In other words, it is not the form of the organization, but its activities. In *Farmers Reservoir*, the

10

Court found that the irrigation cooperative was not engaged in agriculture. Here, Sugar Farms Co-op clearly is.

Sariol also directs our attention to the Department of Labor's regulations, which note that "employees of a farmers' cooperative association are not generally engaged in any practices performed 'by a farmer' within the meaning of section 3(f)." 29 C.F.R. § 780.133(a) (citing *Farmers Reservoir*). This regulation merely restates the rule from *Farmers Reservoir*. In fact, the next subsection clarifies that

> [i]t is possible that some farmers' cooperative associations may themselves engage in actual farming operations to an extent and under circumstances sufficient to qualify as a "farmer." In such case, any of their employees who perform practices as an incident to or in conjunction with such farming operations are employed in "agriculture."

29 C.F.R. § 780.133(b).

Sugar Farms Co-op, which without doubt engages in "actual farming operations," is just the type of cooperative association envisioned by subsection (b). There is no merit to Sariol's contention that all cooperative associations are ineligible for the exemption, and Sugar Farms Co-op is clearly one cooperative that is eligible.

AFFIRMED.

11