[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-13953
Non-Argument Calendar
_____

D.C. Docket No. 1:11-cv-20250-JAL

EUTOLIO A. RODRIGUEZ,
FRANCISCO JAVIER TOLEDO HERNANDEZ,

                                                   Plaintiffs-Appellants,

versus

PURE BEAUTY FARMS, INC.,
DEBORAH L. JORDAN,
ENRIQUE A. YANES,

                                                   Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(January 9, 2013)

Before CARNES, BARKETT and HULL, Circuit Judges.

PER CURIAM:

Plaintiffs Eutolio A. Rodriguez and Francisco Javier Toledo Hernandez appeal the district court's grant of summary judgment, in favor of their former employer Pure Beauty Farms, Inc. and its owner Enrique A. Yanes, disposing of Plaintiffs' claims for unpaid overtime wages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a)(1). The district court ruled that Plaintiffs Rodriguez and Hernandez, as agricultural workers, were exempt from the FLSA's overtime provisions. After review, we affirm.[1]

## I.  BACKGROUND FACTS

Pure Beauty Farms ("the Farms"), a commercial nursery-farming operation, cultivates and grows plants on land owned by the Farms in Florida. The Farms transports its plants to Home Depot sites where employees of the Farms continue to care for the plants. The Farms' plants are kept in staging areas within the stores' lawn and garden departments. The plants remain the property of the Farms until they are scanned at Home Depot's register as part of a customer's purchase. Home Depot then pays the Farms an agreed upon price for the plant. Unsold plants are

---

[1]We review <u>de novo</u> the district court's grant of summary judgment, applying the same standards as the district court and viewing the facts and all reasonable inferences therefrom in the light most favorable to the non-moving party. <u>Sariol v. Fla. Crystals Corp.</u>, 490 F.3d 1277, 1279 (11th Cir. 2007).

returned to the Farms.  And, the Farms bears the loss if one of its plants dies on the shelf before sale or is returned by the customer.

Plaintiffs Rodriguez and Hernandez worked for the Farms as "merchandisers" or "merchants."  Plaintiffs' job was to make sure that the Farms' plants, while located in Home Depot stores, remained healthy, attractive, and in a sellable condition until they were purchased.  To keep the plants well-maintained at the Home Depot sites, Plaintiffs' duties included inspecting the plants for insects, ensuring they were watered and, if necessary, watering them, arranging them in the store so that they would get the right amount of sunlight or shade, and removing dead flowers, leaves, thorns, branches or rotted buds.  Plaintiffs also kept the plant staging areas clean, sent unsalable plants back to the Farms and requested more plants.  Plaintiffs took care of and handled only plants belonging to the Farms.

Both Plaintiffs Rodriguez and Hernandez averaged over forty hours of work per week.  For those hours in excess of forty, the Farms paid Rodriguez and Hernandez straight time, rather than overtime, wages.

## II.  DISCUSSION

3

An employee is exempt from the FLSA's overtime provisions if he is "employed in agriculture."  See 29 U.S.C. § 213(a)(6). [2]  The FLSA defines "agriculture" two ways: (1) "primary agriculture" and (2) "secondary agriculture." 29 C.F.R. § 780.105; see also Sariol v. Fla. Crystals Corp., 490 F.3d 1277, 1279 (11th Cir. 2007). [3]  Under the FLSA, "primary agriculture" includes specific farming activities, such as cultivation or tillage of the soil.  29 U.S.C. § 203(f).

The FLSA provides a much broader definition of "secondary agriculture." Sariol, 490 F.3d at 1279.  Under the FLSA, "secondary agriculture" consists of "any practices . . . performed by a farmer or on a farm as incident to or in conjunction with such farming operations, including preparation for market, delivery to storage or to market or to carriers for transportation to market."  29 U.S.C. § 203(f); see also 29 C.F.R. § 780.105 (explaining that "secondary" agriculture has a "somewhat broader" meaning than "primary" agriculture).

We agree with the district court that the work Plaintiffs Rodriguez and Hernandez performed for the Farms falls within the meaning of "secondary

---

[2]The employer bears the burden of showing that an employee is exempt from the FLSA's overtime requirements, and we construe the FLSA's exemptions narrowly.  Alvarez Perez v. Sanford-Orlando Kennel Club, Inc., 515 F.3d 1150, 1156 (11th Cir. 2008).

[3]The FLSA includes within the term "agriculture," "the production, cultivation, growing and harvesting of any . . . horticultural commodities."  29 U.S.C. § 203(f).

agriculture."[4]  The definition of secondary agriculture has three requirements: (1) the "practice must be performed either by a farmer or on a farm"; (2) it must "be performed either in connection with the farmer's own farming operations or in connection with farming operations conducted on the farm where the practice is performed"; and (3) it must be "performed 'as an incident to or in conjunction with' the farming operations."  29 C.F.R. § 780.129; see also Sariol, 490 F.3d at 1279-80.[5]

As to the first requirement, to be a "farmer" within the meaning of the agricultural exemption, "the employer must be engaged in activities of a type and to the extent that the person ordinarily regarded as a 'farmer' is engaged."  29 C.F.R. § 780.130.  A farmer also generally "performs his farming operations on land owned, leased, or controlled by him and devoted to his own use."  Id.  29 C.F.R. § 780.131.  However, the term "farmer" is "an occupational title" and broadly includes an employer who grows his own agricultural products but whose "only purpose is to obtain [those] products useful to him in a non-farming

---

[4]The parties do not dispute that Rodriguez and Hernandez's work falls outside the definition of "primary agriculture."

[5]We apply Chevron deference to the U.S. Department of Labor's ("DOL") regulations implementing the FLSA when the statutory text is ambiguous or leaves terms undefined.  See Josendis v. Wall to Wall Residence Repairs, Inc., 662 F.3d 1292, 1299 (11th Cir. 2011) (citing Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 104 S. Ct. 2778 (1984)).  The FLSA leaves undefined the terms used to describe secondary agriculture.  The parties do not argue that the DOL's regulations interpreting these terms are not entitled to Chevron deference.

enterprise which he conducts." Id. The regulation even gives the example of "an employer engaged in raising nursery stock." Id. (emphasis added).

The Farms, a commercial nursery that grows and cultivates plants, is a "farmer" for purposes of the exemption. See 29 C.F.R. § 780.130 (explaining that it is the employer's status as a farmer that matters, and that the term may apply to corporations as well as individuals). Further, as employees of the Farms, Rodriguez and Hernandez were also "farmers." See 29 C.F.R. § 780.132 ("'Farmer' includes the employees of a farmer."). Thus, the practices Rodriguez and Hernandez performed at the Home Depot sites were performed "by a farmer."

In addition, those practices were performed "in connection with the farmer's own farming operations." See 29 C.F.R. § 780.129, id. § 780.137 (explaining that "the requirement is not met" when employees are engaged in practices performed in connection with the farming operations of another farmer). It is undisputed that Rodriguez and Hernandez maintained only plants owned and grown by the Farms; therefore, their work was in connection with the Farms' own farming operations. Thus, the first two requirements of the secondary definition of agriculture are easily met.

The parties' dispute focuses primarily on the third requirement—whether the practices Rodriguez and Hernandez performed for the Farms, but on Home Depot

6

store-sites, were "incident to or in conjunction with" the Farms' farming operations. See 29 C.F.R. § 780.129. "Generally, a practice performed in connection with farming operations is within the statutory language only if it constitutes an established part of agriculture, is subordinate to the farming operations involved, and does not amount to an independent business." 29 C.F.R. § 780.144. When, as here, the practice is performed on "agricultural or horticultural commodities," to determine whether "the practice is conducted as a separate business activity rather than as a part of agriculture," consideration is given to, among other things: (1) whether "the type of product resulting from the practice" remains in its raw or natural state or changes; (2) "the value added to the product as a result of the practice and whether a sales organization is maintained for the disposal of the product"; and (3) whether the product is "sold under the producer's own label rather than under that of the purchaser." 29 C.F.R. § 780.147. A farmer or his employees selling the farmer's own agricultural commodities is also a practice "incident to or in conjunction with the farming operations" as long as "it does not amount to a separate business." 29 C.F.R. § 780.158(a).

In addition, the Department of Labor has specific regulations addressing employees of nurseries. If nursery employees are engaged in "[p]lanting, cultivating, watering, spraying, fertilizing, pruning, bracing, and feeding the

7

growing crop," they are employed in agriculture.  29 C.F.R. § 780.205.

"Employees of a grower of nursery stock who work in packing and storage sheds

sorting the stock, grading and trimming it, racking it in bins, and packing it for

shipment are employed in 'agriculture' provided they handle only products grown

by their employer and their activities constitute an established part of their

employer's agricultural activities and are subordinate to his farming operations."

29 C.F.R. § 780.209 (emphasis added).  However, if the "grower of nursery stock

operates, as a separate enterprise, a processing establishment or an establishment

for the wholesale of retail distribution of such commodities, the employees in such

separate enterprise are not engaged in agriculture."  Id. (citations omitted).

"Although the handling and the sale of nursery commodities by the grower at or

near the place where they were grown may be incidental to his farming operations,

the character of these operations changes when they are performed in an

establishment set up as a marketing point to aid the distribution of those products."

Id.

Section 780.209 cites as contrasting examples Walling v. Rocklin, 132 F.2d

3 (8th Cir. 1942), and Mitchell v. Huntsville Nurseries, 267 F.2d 286 (5th Cir.

8

1959).[6]  In Walling, the employees worked at a flower shop owned by a nearby greenhouse, and ninety percent of the flowers they sold to both the wholesale and retail trade were cultivated at the greenhouse.  The Eighth Circuit concluded that the flower shop was not a separate enterprise, but instead was maintained "in connection with and incidental to" the greenhouse and that its employees were exempt under the secondary definition of agriculture.  Walling,132 F.2d at 6-7.

In contrast, in Mitchell, the employees worked at a packing and storage warehouse of a large plant wholesaler.  The employees handled primarily nursery stock from other, out-of-state growers, not from the wholesaler's own nearby farm, which had its own warehouse for its nursery stock.  The Fifth Circuit concluded that the work performed at the warehouse was "incidental to, or in conjunction with," the farming operations of the other growers, and thus that the warehouse employees were not exempt.  Mitchell, 267 F.2d at 290-91.

Here, the Farms handles and sells only its own plants, and Rodriguez and Hernandez watered, pruned, and cared for only the Farms' plants situated at the Home Depot stores.  Unlike the employees in Mitchell, Rodriguez and Hernandez did not work in a wholesale distribution center for other growers' horticultural products.  Cf. Mitchell, 267 F.2d at 290-91; see also Adkins v. Mid-American

---

[6]See Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. Cir. 1981) (en banc) (adopting as binding precedent in the Eleventh Circuit all decisions of the former Fifth Circuit decided prior to October 1, 1981).

Growers, Inc., 167 F.3d 355, 357 (7th Cir. 1999) (explaining that when an employer "buys plants and then resells them without doing significant agricultural work it is operating as a wholesaler rather than as a grower, and wholesalers of agricultural commodities are not exempt from the Act"); Wirtz v. Jackson & Perkins Co., 312 F.2d 48, 51 (2d Cir. 1963) (stating that "[w]ere any significant portion of the stock handled in defendant's storages purchased from . . . independent sources" the agricultural exemption would not apply because it "is inapplicable to services performed by employees of mere distributors of agricultural products"). Rodriguez and Hernandez are more akin to the flower shop employees in Walling, who handled and sold only their employer's own nursery stock. See Walling, 132 F.2d at 6.

In any event, the kind of work Rodriguez and Hernandez performed on the Farms' plants is explicitly identified in the regulations as "agricultural," such as watering them, pruning away dead limbs, leaves and buds and preparing them for market by handling, inspecting and sorting them. See 29 C.F.R. § 780.205. Nothing Rodriguez and Hernandez did to the plants changed them from their natural state, such that they could be said to be engaged in the separate enterprise of processing or manufacturing. Cf. Mitchell v. Budd, 350 U.S. 473, 480-82, 76 S. Ct. 527, 532 (1956) (concluding that workers at tobacco-bulking plant, where a lengthy fermentation process substantially changed the tobacco's physical

10

properties and chemical content, were not exempt as agricultural workers). Indeed, by ensuring that the Farms' plants continued to receive adequate water and light and were pruned and insect-free while in the staging areas, Rodriguez and Hernandez's work was directly connected with and subordinate to the Farms' own nursery-farming operations.

We are not persuaded by the Plaintiffs' argument that the FLSA's agricultural exemption does not apply to them merely because the Farms uses independent contractors to transport its plants to the Home Depot stores. The only authority Rodriguez and Hernandez cite for this proposition is 29 C.F.R. § 780.154. However, that regulation applies only when the farmer uses an independent contractor to transport his agricultural products to a wholesaler or processor and relinquishes ownership or control of the agricultural products at the receiving platform of a wholesaler or processor.[7]

In contrast, here the Farms retains ownership of the plants not only while they are transported from the farm but also while the plants are displayed for sale

---

[7]Section 780.154 provides that when agricultural products are delivered "to market" off of the farm by the farmer's employees, the work is exempt, but if the delivery is made by an independent contractor, it "is not an agricultural practice." 29 C.F.R. § 780.154 (citations omitted). The same regulation further explains: (1) that the phrase "delivery to market" "ordinarily refers to the initial journey of the farmer's products from the farm to the market"; (2) that the term "market" "normally means the distributing agency, cooperative marketing agency, wholesaler or processor"; and (3) that, under such circumstances, "[d]elivery to market ends with the delivery of the commodities at the receiving platform of such a farmer's market." Id. (citing as an example Mitchell, 350 U.S. 473, 76 S. Ct. 527).

11

in the Home Depot stores.  The Farms' employees receive the plants when they are delivered by the independent transport contractors and then continue to care for the plants until they are sold.  Under the particular facts of this case, the mere fact that the Farms used independent contractors to transport its plants did not end its status as a farmer and render non-exempt Rodriguez and Hernandez's work caring for the plants before a purchaser buys them at the Home Depot stores.

We also reject the Plaintiffs' argument that they were engaged in a separate business enterprise of selling plants because their job was to make the plants aesthetically pleasing.  First, there is no evidence that Rodriguez and Hernandez sold the plants.  Rather, they watered, pruned, and cared for the plants until they were sold.  Second, even if Rodriguez and Hernandez's duties could be characterized as "selling" the plants, so long as they sold only the Farms' plants, their work would be exempt.  See 29 C.F.R. § 780.158(a) (including as an agricultural practice a farmer's employees selling the farmer's own agricultural commodities); see also Walling, 132 F.2d at 6.  The Farms did not operate a plant marketing business separate and distinct from its nursery-farming operations, and any "selling" Rodriguez and Hernandez were doing was incident to or in conjunction with the Farms' nursery-farming operations.

For all these reasons, we agree with the district court that Plaintiffs Hernandez and Rodriguez's job duties for the Farms fell within the FLSA's

12

definition of secondary agriculture and that they therefore were exempt from the FLSA's overtime provisions.  Accordingly, the district court properly granted summary judgment to Defendants the Farms, Inc. and Yanes.

**AFFIRMED.**